JUDGE DUVALL
delivered the opinion of the court:
The Lexington and Danville railroad company brought an action in the Fayette circuit court against Shoup, in which it was alleged, in substance, that the plaintiffs had previously entered into a written agreement with the defendant, and one De Graff, by which the plaintiffs were to deliver to the defendant and De Graff $85,000 of Fayette and Boyle county bonds *386 on account of work to be done by them as contractors on the road, and for the due application of which bonds they were to give security; that the bonds had been delivered to Shoup & De Graif at 85 cents to the dollar, and amounted in cash to $72,250; that after Shoup & De Graff had done about $40,000 worth of work on the road, they had ceased, and would neither progress with the work nor give back the bonds not paid for in work, and had failed to give the security as stipulated in the agreement. The plaintiffs prayed judgment that defendant be required to give the security, or to pay in money the difference between the value of the bonds and the work performed.
The plaintiffs having made the affidavit and given the bond required by law, an order of arrest was issued on the 13th September, 1854, directing the sheriff of Fayette county “ to arrest the defendant, Joel O. Shoup, and hold him to hail in this action, in the sum of thirty-two thousand and twenty-five dollars,” &c.
On this order of arrest the sheriff made the following return:
“Executed, Septémber 13th, by arresting the within named Joel O. Shoup, and delivering a true copy of this summons to him. Whereupon Thomas Barbee entered as his security. See bond returned.
[Signed:] “E. E. Eagle, d. s.
“ for Waller Rodes, s. e. c.”
The bond executed by Barbee and referred to in the return of the sheriff, is as follows:
“Joel O. Shoup, having been held to bail in the Fayette circuit court, at the suit of the Lexington and Danville railroad company, in the sum of $32,000, for the purpose of releasing said Shoup from arrest, I undertake that he will perform the judgment that may be rendered in the action of the Lexington and Danville railroad company against said Shoup, in which Shoup is held to bail not exceeding $32,000. Witness our hands this 13th day of September, 1854.
[Signed:] “Thos. Barbee.”
On this bond appears the following indorsement:
“ The sheriff of Fayette county is authorized to receive this *387 bond, under the writ this day issued against J. 0. Shoup, in lieu of the usual one in such cases.
“Leslie Combs, Pres. Danville and Lex. R. R. Co.”
It appears from the record, that in February following, Bar-bee, in pursuance of the provisions of the Code which prescribe the mode in which bail may be discharged in civil cases, (secs. 196 and 203, inclusive,) surrendered Shoup to the sheriff of Fayette, delivering to the latter, at the same time, a copy of the order of arrest, together with a bail bond executed in regular form by Barbee and M. F. Maury. Shoup was thereupon taken by the sheriff before the presiding judge of the county, took the insolvent debtor’s oath, and was discharged from arrest.
On the same day Barbee appeared in the circuit court, and tendered the bail-bond executed by himself and Maury, and moved the court to substitute that bond for the bond theretofore executed by Barbee as the surety of Shoup. The court took time- to consider this motion, and the bond offered was filed. The record does not show that any disposition of the motion was afterwards made.
A final judgment in the action was rendered against Shoup, in February, 1856, for $27,250, upon which execution subsequently issued, and was returned “no property found,” &c.
This action was then instituted by the Lexington and Dan-ville railroad company against Barbee, on his bond dated the 13th September, 1854. The plaintiffs, after setting out the bond, allege that at the time of its execution Shoup was under arrest, and in the custody of the sheriff of Fayette, under and by virtue of the order of arrest before mentioned; that the bond was executed with the plaintiff’s consent, in lieu of the ordinary bail-bond, for the purpose of releasing Shoup from arrest, and in pursuance thereof Shoup was, upon the execution of the bond, discharged from arrest. The recovery of the judgment against Shoup, and his insolvency are alleged, and judgment is prayed against Barbee for $27,500, with interest, &c.
To this petition the defendant demurred; the demurrer was sustained, and the plaintiffs thereupon filed an amended peti *388 tion, in which it is alleged in substance that Shoup, being in custody, and having failed-to give bail, proposed to compromise the action, and agreed with plaintiffs that he would give security as required by the petition as soon as he could go to his residence in Ohio; and the plaintiffs agreed that upon Shoup’s giving security to perform the judgment in the action, they would discharge him from arrest, and when he should give the security required by the petition, the plaintiffs would dismiss the action and discharge the temporary security given for the performance of the judgment; that the plaintiffs caused to be prepared two bonds, one of them the bond sued on, and the other for the due application of the bonds which had been received by Shoup & De Graff, and said Shoup was to have the bonds, thus prepared, executed according to said agreement ; that Barbee, being one of the directors of the plaintiffs, “ did become the temporary security of said Shoup, according to said agreement, and did sign and execute the bond prepared for that purpose, and the deputy sheriff having said Shoup in custody, not being willing to discharge said Shoup from custody without authority for that purpose, the plaintiffs, by their president, did authorize him to receive said bond in lieu of a bail-bond, and did discharge said Shoup from custody. But plaintiffs aver that the sheriff never did require said bond to be executed, and did not take said bond by color of his office, but the same was given voluntarily under the said agreement between plaintiffs and said Shoup.”
The record of the action in the Fayette circuit court against Shoup is made part of the petition, and is embodied in the record before us.
The petition, as amended, was again demurred to, and the demurrer sustained. The plaintiffs saying nothing further, the action was dismissed and judgment rendered against them for costs, and from that judgment they have prosecuted this appeal.
The only -question presented by the record is, whether the petition, as amended, states facts sufficient to constitute a valid cause of action. In considering this question, it will be neces *389 sary to inquire, in the first place, whether the obligation on which the action is founded is prohibited by law.
The Civil Code (see. 190) provides that “ bail may be given by the defendant, on his arrest, or at any time afterwards before judgment. It shall be done by causing one or more sufficient bail to execute a bond to the plaintiff, in the presence of the sheriff, or of the j ailor, where the defendant has been committed to jail, to the effect, that if judgment shall be rendered in the action against the defendant, he will render himself amenable to the process of the court thereupon. The bond, when accepted, shall be returned to the clerk’s office, and the defendant discharged.”
By section 14 of the Revised Statutes (p. 615) it is provided that “ no sheriff, or other officer, shall take any obligation of or from any person in his custody, for or concerning any matter relating to his office, otherwise than such as is specially directed by law. Every obligation taken by any such officer, by color of his office, in any other manner or form, shall be null and void.”
Assuming for the present that the bond sued on in this case was taken by the sheriff of Fayette, under the order of arrest then in his hands against Shoup, and “ by color of his office,” it is perfectly clear that the bond is within the express inhibition of the statute, and is therefore null and void, either as a statutory or common law obligation. The bond “ specially directed by law” to be taken in such cases, should provide merely that “if judgment shall be rendered in the action against the defendant, he will render himself amenable to the process of the court thereupon.” The bond, as taken, contains a stipulation greatly more comprehensive and onerous — “ I undertake that he (the defendant in the action) will perform the judgment th^t may be rendered,-in the action,” &c. That a variance so material, both as to form and substance, between the bond prescribed by law and the bond executed by Barbee, is sufficient to render the latter void, has been settled by adjudged cases, almost without number, decided not only by this court, but by the courts of other states in -which similar statutory provisions have been adopted. (January vs. Cartwright, Lit. Sel. Cas., 449; Young, &c., vs. Commonwealth, 2 A. K. Mar., 63; Handley's Adm’rs vs. Ewing, 4 Bibb, *390 505; Moore vs. Allen & Grant, 3 J. J. Marsh., 613; Baskett, use of, &c., vs. Scott, 5 Litt., 208; Love vs. Palmer, &c., 7 Johnsons R., 159; Strong vs. Tompkins, 8 Johnson, 98; Sullivan vs. Alexander, &c., 19 Johnson, 233; Richmond vs. Roberts, 7 Johnson, 319.)
This point has not been seriously controverted in the argument ; but the able and ingenious counsel for the appellants undertakes to avoid the effect of the variance by insisting—
1. That the petition does not show that the bond in question was taken by a sheriff from a person in his custody by color of his office; and.
2. That the bond is such as the sheriff was authorized to receive, by the voluntary act of the person in custody, according to section 186 of the Civil Code.
We proceed to examine, briefly, the two points thus presented :
1. It will not be difficult to demonstrate, upon the face of the petition and of the records constituting a part of it, that the first proposition cannot be maintained. It is nowhere stated in the petition, either directly on inferentially, that the bond was taken or received by the plaintiffs, from Shoup or from Barbee. All the facts and circumstances attending the execution and delivery of the bond, and which show in what manner, in what character, and with what object it was taken by the sheriff, are set forth in the following allegations: that Bar-bee “did become the temporary security according to said agreement, and did sign and execute the bond prepared for that purpose, and the deputy sheriff having said Shoup in custody, not being willing to discharge said Shoup from custody without authority for that purpose, the plaintiffs, by their president,. did authorize him to receive said bond, and accordingly the sheriff thereupon received said bond, and did discharge said Shoup from custody.” Now, whether the sheriff received the bond in his official character, or as the mere friend and agent of the parties, depends altogether upon the nature and extent of the authority given by Combs. This authority is in writing, and constitutes part of the petition. Its terms are explicit and unambiguous, and there can be no difficulty as to their import. *391 “ Tbe sheriff of Fayette county is authorized to receive this bond, under the writ this day issued against J. O. Shoup, in lieu of the usual one in such cases.” It is distinctly averred that the sheriff, in receiving the bond and discharging the defendant, Shoup, acted according to this authority. Did it authorize the sheriff to receive the bond as a private obligation, executed and delivered in pursuance of the private agreement recited in the petition? Not at all. It authorized him to receive it in his official character — “ under the writit authorized him as sheriff to do an official act which he had no right to do by law; and the only effect of the authority was to protect the sheriff from any liability to the plaintiffs which might result from such illegal act. It did not even purport to divest the transaction of its official character. The clear import of the averment, therefore, considered in connection with the written authority to which it refers, is, that the sheriff received the bond as sheriff; that he received it under the writ — that is, by virtue of, or in obedience to, the writ then in his hands against Shoup; that he received it in lieu, not of a bail bond, but in lieu of the usual bond given in such cases. Did he not therefore take it by color of his office ? It seems to us that this interpretation of the petition would be inevitable, even if the record contained nothing else to sustain it. But the official character of the transaction is still more clearly shown by the return of the sheriff indorsed upon the order of arrest, in which it is stated that the writ had been executed “by arresting the within named Joel O. Shoup, and delivering a true copy of this summons. Whereupon Thomas Barbee entered as his security. See bond returned.” This return is, in every respect, formal and regular. It is such as would not, and could not, have been made upon the state of fact hypothecated in the argument for the appellants. It shows that the writ had been fully executed by the sheriff, first by the arrest of Shoup; secondly, by the taking of the bond from Barbee, as the security of Shoup; and thirdly, by the return of the writ and bond as the legal record evidence of his official action under it. It will be observed, too, that this official action of the sheriff was in strict conformity to the authority he had received from Combs. He received the bond “ under the *392 writ, in lieu of the usual one in such cases,” and he returned it with the writ, as directed by law.
But it is contended that the return of the sheriff does not conclude or estop the appellant from showing that the facts stated in it are not true; that estoppels are mutual, and where one is not bound the other is not. We will not stop to discuss this question further than to refer to the general principle, often decided, that the sheriff’s return is, in general, conclusive as to the parties to the record, though not so as to strangers. The point is wholly immaterial here, however, because the petition, as construed by us, does not contradict the facts stated in the return; and because, furthermore, the return forms a part of the petition, and may, therefore, be considered as, at least, explanatory of its averments.
The recitals in the bond also disclose, with equal certainty, the objects and purposes of its execution. It recites that Shoup had been held to hail in the Fayette circuit court, and that, for the purpose of releasing said Shoup from arrest, the obli-gor undertook that he would perform the judgment that might be rendered in the action, &c.
The concluding averment of the amended petition, that the sheriff “ did not take said bond by color of his office, but the same was given voluntarily under the said agreement between plaintiffs and said Shoup,” certainly cannot be allowed to prevail against the previous allegations, which explain, specifically and definitely, the manner in which the bond was received and taken.
Our conclusion, therefore, is, that the allegations of the petition, when ■ properly analyzed, and interpreted in the light afforded by the several exhibits to which reference has been made, present a state of fact which admits of no other logical or rational deduction, than that the bond in question was taken by the sheriff, “by color of his officethat it was taken under and by virtue of the order of arrest, according to the written authority of Combs, and was returned by the sheriff as an official statutory obligation to the clerk’s office, in the manner directed by law, (Civil Code, section 190,) and that, according to the provisions of the Revised Statutes already quoted, the *393 bond must be pronounced null and void, unless its obligatory effect can be maintained upon some other ground.
2. And this brings us to the consideration of the second point relied on by the appellants, which is, that the sheriff had the official right to take a bond such as this, by the voluntary act of the party, under the provisions of the Civil Code, (sec. 186.) That section is as follows: “ The defendant may, before or after giving bail, deposit in the hands of the sheriff, or in court, the amount of money mentioned in the order of arrest; whereupon he shall be discharged, or his bail, if any is given, shall be released.”
It is contended, that under this provision the sheriff might, with the consent of the plaintiffs, receive bank notes, or the notes of individuals, or the undertaking of individuals, for the satisfaction of the judgment, when voluntarily given by the person in custody, and with the knowledge of his privilege of giving bail; that all these, being in law of the same nature, and of a less onerous character than the actual deposit of money, are included in it, so far as the statute is concerned.
The first objection to this argument is, that it rests upon an assumption of fact wholly unauthorized by the record. It assumes that the bond was given in pursuance of a private agreement between the parties, in lieu of an official bond, and in lieu of the deposit of money authorized by the Code. We have already shown that, according to the allegations of the petition, the bond was delivered as an official bond; that it was taken as such by the sheriff, under the order of arrest, and, consequently, by color of his office.
It is conceded in the argument, that one of the objects of the statute which prohibits the sheriff from taking a bond from a person in his custody, by color of his office, otherwise than such as is directed by law, was to protect the person under arrest from the effects of the ignorance or mistake of the sheriff in requiring, as the condition of his release, the execution of a bond different from, or more onerous than that prescribed by law. It is not denied that the bond in this case is not only different from, but greatly more onerous in its stipulation than the bond directed by law. But it is insisted that the sheriff *394 bad a right to take it because it was a security of the same nature as the deposit of the money, though inferior in degree, and was less burdensome upon the defendant. The whole of the reasoning upon this point results in this, that although the bail bond required by law stipulates only that if judgment shall be rendered against the defendant, he will render himself amenable to' the process of the court thereupon, yet that a bond, taken under an order of arrest by the sheriff, by color of his office, which stipulates that the defendant will perform the judgment that may be rendered against him, is, nevertheless, valid, because it is less burdensome or onerous to the defendant than another mode of release which, the law provides — the deposit of the money sued for with the sheriff or in court.
It seems to us that the mere statement of the argument is a sufficient exposition of its fallacy. The construction contended for is in direct conflict not only with the letter of the statute, but with its manifest policy and spirit. It declares emphatically that every obligation taken by such officer, by color of his office, in any other manner or form (than is specially directed by law) shall be null and void. To say that such obligation should be held valid, upon the ground assumed, would be, virtually, to repeal the statute, or at least to divest it of all its efficacy.
We have not noticed specially the question incidentally suggested in argument, whether the bond in this case can be considered as “ an obligation of or from any person in his (the sheriff’s) custody,” for the reason that it has been substantially disposed of in what has been said upon other points.
The judgment is therefore affirmed.