HELEN C. BELL, executrix, *vs.* CITY OF BOSTON.
SAMUEL E. BRACKETT & another *vs.* SAME.

B and others, abutters on a street in Boston, agreed in writing, for themselves, their heirs and assigns, that, in consideration that the board of aldermen would take land of G. to widen the street, they would grant and release to the city, without any claim for compensation or damages, certain parcels of their land for the purpose of widening the street according to a certain plan, whenever the board should deem that the public safety and convenience required the taking of the lands by the city. B. annexed to his signature a condition that all the conditions on the part of others who had signed should be carried into effect, and the street widened accordingly. These conditions related to the continuance of obstructions within the limits of the proposed widening, and to the carrying into effect of the whole of the widening. The board afterwards passed an order that the public safety and convenience required the widening, and in accordance therewith took the parcel of B.'s land. *Held*, that the condition imposed by B. was not a condition precedent to the taking; and that, if the whole widening was carried out and the conditions were fulfilled, though after the taking, the agreement of B. was a defence to a petition by him or his heirs for damages for the widening, although no release of his parcel was ever demanded by the city.

B. agreed in writing, though not under seal, for himself, his heirs and assigns, that, in consideration that a city would take land of G. to widen a street, he would release to the city without compensation part of his land for the purpose of said widening whenever the board of aldermen should deem that the public safety and convenience required the taking of the land. The agreement was never expressly revoked. Eighteen years after the agreement, and fifteen years after the death of B., the city took the land of G. *Held*, that the agreement bound in the hands of B.'s heirs the land which he agreed to release.

B., by a written contract, not under seal, agreed to release to a city, without claim for compensation or damages, parcel of certain land belonging to him, for the purpose of widening a street, and then died intestate, leaving several heirs, one of whom, J., purchased the interest of the others in the land. The city took the parcel for the purpose agreed on. *Held*, that the contract of B. was a defence to a claim by J. against the city of damages for taking the parcel, if the amount of damages claimed was not greater than the share of B.'s estate inherited by J., even if J. had no notice of the contract.

Two PETITIONS, the first brought originally by Joseph M. Bell, and prosecuted, after his decease pending the proceedings, by his executrix, and the second by Samuel E. Brackett and Samuel F. Damon, to recover damages sustained by the taking, for the purpose of 'widening Summer Street in Boston, of land belonging to Bell and leased to Brackett and Damon. The case was submitted to the judgment of the superior court, and, on appeal, of this court, on facts agreed substantially as follows:

On July 25, 1848, the land was owned in fee by Joseph Bell, (father of Joseph M. Bell,) and he, with others, on that day signed, but did not seal, the following writing:

" In consideration that the board of aldermen will widen Summer Street by taking so much of the land of John C. Gray as lies northerly of a prospective line of said Summer Street, on its southerly side, as the same is indicated upon a plan of said street just drawn by Samuel Nott, and now deposited with the city plans," " we, the subscribers, owners of estates on Summer Street, and abutters thereon, do hereby severally agree, for ourselves, our heirs, administrators, and assigns, that we will give, grant, release and surrender in fee simple to the city of Boston, by good and sufficient instruments, and without any claim or demand for remuneration, compensation or damages therefor, such parcels of our several estates on said Summer Street as shall lie between the lines of said Summer Street, as now existing, and the prospective lines thereof, as drawn upon said plan and proposed to be established, for the purposes of said widening, whenever in the opinion of the board of aldermen the public safety and convenience of the inhabitants require that said lands should be taken by the city : it being understood and agreed, however, that, in cases where houses already erected on Summer Street shall project beyond said prospective lines, the walls of the same shall not be cut off or disturbed by the city, but may continue to project until the same be altered or pulled down by their respective owners."

Joseph Bell annexed to his signature the following condition : " On the condition that all the conditions on the part of those who have signed before me are carried into effect and the street widened accordingly." The conditions annexed to the signatures of those who had signed before Bell, or of some of them, were : that the whole proposed widening of the street should be carried into effect, and without expense to the signer ; that while the signer's house was used as a dwelling-house the steps and balcony should remain as they were, and a fence should be erected ranging with the outside step ; that the trees and fence in front of the signer's house should not be disturbed without his consent ; that the walls of the signer's house should not be disturbed but by his consent and without expense to him ; and that no part of the signer's land should be taken without his consent so long as his house was used as a dwelling-house.

This writing was never acknowledged or proved in any manner, but in 1856 was delivered by the respondents to the register of deeds for Suffolk, and by him copied into the books containing the records for that county.

In 1851 Joseph Bell died intestate, leaving a widow, his son Joseph M. Bell, three daughters, and the children of a deceased daughter. By deeds duly executed and recorded, in the year 1861, the widow and the other heirs conveyed all their interest in the estate on Summer Street to Joseph M. Bell, who, on February 26, 1866, demised it to Brackett and Damon, for a term to expire in 1879, by a written lease, which was duly recorded.

On July 23, 1866, the board of aldermen passed an order, that the safety and convenience of the inhabitants of the city required that Summer Street should be widened; that for that purpose it was necessary to take land which Joseph Bell had agreed to release ; that it was accordingly taken and laid out as a public street or way ; and that the expense amounted to nothing, "said widening of street and taking of land being in accordance with an agreement between the city and the abutters on said street." At the time of this taking, all the land on Summer Street of those who signed the agreement before Joseph Bell had not been taken, nor had the street been widened, according to the plan and condition ; " but the whole proposed widening was carried into effect, and the street was widened according to the plan, before the expiration of one year from the taking of the land of Joseph M. Bell, and the conditions annexed to the names of those who signed the agreement before Joseph Bell were fulfilled by the city within said year"

*G. S. Hale & S. S. Shaw*, for the petitioners.

*J. P. Healy & C. H. Hill*, for the respondents.

WELLS, J. 1. The first position, advanced by the counsel for the petitioners, is, that the agreement of Joseph Bell was upon conditions precedent, all of which had not been complied with when the land was taken for the street. The provision is : " On the condition that all the conditions on the part of those who have signed before me are carried into effect and the street widened accordingly." The " conditions " on the part of those

who had previously signed the agreement, related to the continuance of certain obstructions within the limits of the proposed widening of the street ; and, by their very nature, contemplated the lapse of an indefinite period, after the laying out of the . street, before they would be fully " carried into effect." These were clearly conditions subsequent; and, so far as compliance with them formed the object of the condition upon which Mr. Bell signed the agreement, it necessarily would also take the character of a condition subsequent. As no breach of those conditions is shown, we need not consider, therefore, the question whether such obstructions could be legally maintained or permitted, after the street was established.

The main purpose of the condition was, undoubtedly, that the whole street should be " widened accordingly." As the city did not execute the agreement, and did not, and could not, become bound to widen the street, otherwise than by an actual location thereof, it may be more consistent with the relations of the parties, and the security of the rights of the landowners, to regard the stipulation, in this respect, as a condition precedent. But it does not purport to be, and it could not be made, a condition precedent to the taking of the land. That is a public right, the exercise of which, by the proper tribunal, could not be abridged by any agreement of the city. The agreement contemplates that that right will be exercised, under the usual conditions, " whenever, in the opinion of the board of aldermen, the public safety and convenience require " it. Of course the legal right of the landowner to have his damages assessed arises at. once upon such taking ; and, until the city has fully complied with the condition, there is no answer to his claim of damages. But when that compliance is complete, the city is entitled to have the grant, release and surrender, " without any claim or demand for remuneration, compensation or damages therefor." It is immaterial when this right to a release is acquired ; whether it precedes, accompanies or follows the establishment of the street, so that it be before the actual assessment of damages. There would be no question of this, in case of an actual release. The agreement for such a release operates

collaterally to the same result. The landowner is entitled to have his damages assessed, under the provisions of law relating to ways; but, upon such assessment, the city shows that it is entitled to have a conveyance or a full release of all damages for the same land taken, or an equivalent for breach of the agreement. The two rights, the two liabilities, being exactly balanced, it is apparent that no damage has been suffered. *Western Railroad Co.* v. *Babcock*, 6 Met. 346, 358. *Seymour v. Carter*, 2 Met. 520. To avoid circuity of action, the agreement is allowed to have effect as a waiver or payment and satisfaction of the damages claimed. *Foster* v. *Boston*, 22 Pick. 33. *Crocket* v. *Boston*, 5 Cush. 182.

2. Demand for a deed was not requisite. Insisting upon payment of damages, after compliance with the conditions of the agreement, was a breach, if it were necessary to show a breach.

3. The agreement, it is true, was without consideration, and not binding as a contract until the city supplied the consideration, and gave it legal force, by " taking so much of the land of John C. Gray," for the purpose of widening Summer Street, as was therein stipulated. If that was done within a reasonable time, or before the offer was withdrawn, the consideration was supplied and the agreement became binding and irrevocable. *Foster* v. *Boston*, and *Crocket* v. *Boston*, cited above. *Boston & Maine Railroad* v. *Bartlett*, 3 Cush. 224. *Old Colony Railroad Co.* v. *Evans*, 6 Gray, 25. *Goward* v. *Waters*, 98 Mass. 596. The completion of the widening was to be whenever the board of aldermen should be of opinion that it was required for the public safety and convenience.

4. It was not a mere offer to make a contract; nor does it stand like an authority conferred to bind the party by an act to be subsequently performed. It was a complete contract in itself, when it was executed, lacking only a consideration to entitle it to legal enforcement. By its terms that consideration was not to be made to Joseph Bell personally. It required no act on his part for its receipt, and no assent by him. The death of Joseph Bell, therefore, did not terminate the agreement, nor

deprive the city of the right to carry it into effect by the performance of that which was stipulated for as its consideration. It is not contended that it has ever been otherwise revoked.

5. This contract could be specifically enforced upon the land, against the heirs, and against all others claiming under them with notice. Rev. Sts. *c.* 74, § 8. Gen. Sts. *c.* 113, § 2; *c.* 117, § 5. Story Eq. § 788. Under our statutes, the want of a seal, and the omission to name heirs, make no difference in their liability. *Hall* v. *Bumstead*, 20 Pick. 2. It does not appear, from the agreed statement of facts, whether or not the petitioners, or either of them, are chargeable with notice of the agreement. It was contended, in the argument, that Joseph M. Bell was purchaser, for value, of four fifths of the land ; and that, as to so much of his estate, he was not bound by the agreement of his father, Joseph Bell, for want of privity. If he had actual notice of the agreement, at the time or before he purchased, he would be affected thereby. But even if he purchased without notice, he may not be discharged from liability. If the estate of Joseph Bell had not been settled by the usual forms of administration, the obligation of this contract remained as a lien upon the whole estate. If it had been thus fully settled before the accruing of this demand, then the heirs are bound, each one of them to the extent of the property inherited by him. We suppose the one fifth interest, inherited by Joseph M. Bell, to be more than sufficient to cover the entire amount of damages recoverable on account of the widening of the street; and, as against him, it would in that case be a sufficient answer to his claim. When such a liability is to be enforced in equity, all heirs within reach of process are required to be made parties, and the liability is apportioned, and judgment rendered distributively. *Wood* v. *Leland*, 1 Met. 387. The liability of each is not restricted to his equal proportion, but is so adjusted as to secure to the creditor his entire debt. It is suggested in *Wood* v. *Leland*, 22 Pick. 503, and again in *Hayward* v. *Hapgood*, 4 Gray, 437, that, in an action at law, only an aliquot part of the debt can be recovered from each one of the heirs, without regard to the means of enforcing the claim against the

others. This may have been so under the St. of 1788, *c.* 66 § 5. See *Howes* v. *Bigelow*, 13 Mass. 384. But the Revised Statutes, and the General Statutes, declare that each one of the heirs " shall be liable to the creditor to an amount not exceeding the value of real and personal estate that he has received from the deceased." Gen. Sts. *c.* 101, § 32. This is clearly a several liability, having no limit, as between the creditor and the heir, except that which is prescribed by the terms of the statute imposing the liability.

As to the other petitioners, if they are not chargeable with notice, and there is nothing in their lease, or in their relations to the subject matter, which may affect them, they are entitled to recover such damages as they suffer from the taking of a part of their leasehold interest. But as the agreed statement does not furnish all the facts upon which to determine the question of their rights, and as there is no assessment of the damage to their separate interest, the case must be remitted for further proceedings in the superior court.