McIlvaine, J.
The plaintiffs assign for error the following:
1. The court of common pleas erred in overruling the demurrer to the petition.
2. The court erred in rendering judgment in favor of defendant in error upon the pleadings. .
3. The facts stated in the second defence being admitted, judgment should have been for plaintiffs in error.
4. The court found in favor of defendant in error, when it should have found for plaintiffs in error.
I The findings of the court are contrary to the law and the facts.
*345 Substantially the same questions of law arise upon the several assignments.
The original action was brought under favor of the 227th ,and following sections of the administration act (S. & C. 610, 611), providing for the commencement of actions against the heirs, etc., of deceased persons, after the settlement of the estate and after the expiration of the time limited for the commencement of actions against the personal representatives, etc., in cases where the right of action first accrues after the happening of those events.
Section 101 of the same act (S. & C. 585) provides, that no executor or administrator, after having given notice of his appointment, etc., shall be held to answer to the suit of any creditor of the deceased, unless it be commenced within four years from the time of his giving bond, etc. This provision, however, is subject to a modification in section 1 of the act of February 5, 1817 (S. & C. 611), “That any creditor of the estate of any deceased person, whose cause of action shall accrue, or shall have accrued, after the expiration of four years from the time that the executor or administrator of such estate shall give or shall have given bond according to law, and before such estate is fully administered, may commence and prosecute such action at any time within one year after the accruing of such cause of action and before such estate shall have been fully administered; and no cause of action against any executor or administrator shall be adjudged barred by lapse of time, until the expiration of one year from the accruing thereof.”
That the right of the action on the note, as against the estate of Ohnstead, was barred from and after the 11th day of December, 1862, cannot be doubted. And if Bostwick’s cause of action is founded on the note simply by subrogation to the rights of Giddings, it is also barred as against the heirs of Olmstead.
But this action was not founded on the note. The note was fully paid and satisfied by the payment of Giddings’ judgment by Bostwick, on the 19th of November, 1866. By that payment, however, a new cause of action accrued to *346 Bostwick against the representatives of his deceased co-surety, founded upon a “ general equity,” which equalizes burdens and benefits among co-sureties. This new cause of action never did accrue to Giddings, and it first accrued to Bostwick only forty days before suit was commenced.
Bostwick was under no legal or equitable obligation to Olmsteadi’s estate to pay the Giddings note, during the four years of its administration.
A moral and equitable obligation to each other rested equally upon both the sureties, to pay a moiety of that debt, during the whole of that period, as they were each legally and equally bound to pay Giddings, not a moiety, but the whole of his claim.
And had the estate of Olmstead discharged its legal obligation to Giddings to pay the whole of the debt, and its moral obligation to Bostwick to pay a moiety, the unequal burden which Bostwick was afterward compelled to bear,, would not have raised an equity against its representatives.
The proposition, “ that the right to contribution is based on the principle, that both sureties were liable, and that the payment by one discharges the other from a liability which, but for the payment, the other would be bound to meet,” and “ that inasmuch as Olmstead’s estate was discharged by the statute of limitations before Bostwick paid the debt, it (the estate) was relieved of no burden and received no benefit from his payment” and, therefore, is not liable to contribute, cannot be maintained.
If the right of a co-surety to claim contribution rested upon the doctrine of subrogation to the rights of the creditor, the proposition might be true.
The doctrine of subrogation has its origin in the relation of principal and surety, whereby a surety who pays the debt of his principal is, in equity, substituted in the place of the-creditor, and is entitled to all the rights which the creditor may have against his principal. But the doctrine of contribution has its origin in the relation of co-sureties or other joint promisors in the same degree of obligation. It is not *347 founded upon the contract of suretyship. (1 Ohio St. 327, and' 1 Cox, 318.) It is an equity which springs up at the time the relation of co-sureties is entered into, and ripens into a cause-of action when one surety pays more than his proportion of the debt. (4 Grattan, 268.) Erom this relation the common' law implies a promise to contribute in case of unequal payments by co-sureties. But equity resorts to no such fiction.. It equalizes burdens and recognizes and enforces the reasonable expectations of co-sureties because it is just and right in good morals, and not because of any supposed promise between them. This equity, having once arisen between co-sureties, this reasonable expectation that each will bear his share of the burden is, as it were, a vested right in each, and remains for his protection until he is released from all his liability in excess of his ratable share of the burden. Neither the creditor, the principal, the statute of limitations, nor the death of a party, can take it away. 11 N. II. 431; 4 Grattan, 387; 1 Met. 387-9; 17 Mass. 464; 3 Denio, 62; 13 S. &' E. 441; 16 Ala. 465 ; and 4 Greenleaf, 195.
It cannot be said that Bostwick voluntarily paid this debt, or any part of it. If he was legally liable to Giddings, his payments were compulsory, in a legal sense.
He was liable, by the terms of his contract, to pay the-whole debt if his principal failed to do so. And such was the obligation of Olmstead also. Whittlesey did not pay, but died utterly insolvent. The promise of Bostwick was in writing, and was binding for fifteen years under.our statute-of limitations, as to him.
Nor did the neglect of Giddings to bring his action against the estate of Whittlesey or the estate of Olmstead releaseBostwick from his liability for the whole debt. In Sibbley v. McAllaster (8 N. H. 389), the court say, “ It is very apparent, that if the principal die, and his estate is administered in the insolvent course, the creditor is under no obligation to present his claim to the commissioners, and procure what he-may from that estate. He has a right in such a case to look to the surety for the whole amount.” In Johnson v. Planters' Bank (4 S. & M. 165), the court say, “ A creditor is nob *348 bound to active diligence against tbe principal to preserve tbe liability of the surety. If be merely remain passive, tbe liability of tbe surety is unimpaired. Neglect to present tbe claim to tbe administrator of tbe principal within tbe time prescribed by law does not discharge tbe surety.” The same rule is held in 11 N. H. 431, and 16 Ala. 465.
And if tbe neglect of tbe creditor, whereby tbe principal’s estate is released, will not discharge tbe liability of tbe surety, it follows, with greater reason, that like negligence, whereby one surety’s estate is released from direct liability to tbe principal, will not discharge its equitable obligations to a co-surety.
It is therefore clear that Bostwick was not a volunteer.
Nor was Bostwick barred by tbe statute of limitations from setting up and proving his payment of $300 on tbe 8th day of May, 1863. That sum was his own share of tbe debt, as between him and Olmstead’s estate. Its payment gave him no right for contribution, for, if tbe estate of Olmstead bad at any time afterward paid tbe balance, tbe condition of tbe sureties would have been in accordance with their equities.
Lord Eldon in Ex parte Gifford, 6 Ves. 805, says, “ that unless one surety should pay more than bis moiety, be would not pay enough to bring an assumpsit against the other.” And Parke, B., in Davies v. Humphreys, 6 M. & W. 152, says, “ If a surety pays a part of the debt only, and less than bis moiety, be cannot be entitled to call on bis co-surety, who might himself subsequently pay an equal or greater portion of the debt; in tbe former of which cases, such co-surety would have no contribution to pay, and in tbe latter be would have one to receive.”
Among co-sureties tbe right to demand contribution does not arise until one has paid more than his proportion of tbe common liability.
We find no substantial error in tbe record of tbe court of common pleas.

Judgment affirmed.

Scott, C.J., and Welch, White, and Day, JJ., concurred.