# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1870, AT PITTSFIELD.

———

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR.,
HON. JOHN WELLS,
HON. JAMES D. COLT,          } JUSTICES.
HON. MARCUS MORTON,

---

## WILLIAM F. BACON *vs.* THEODORE POMEROY & others.

In order to procure credit for a manufacturing corporation, its stockholders signed and gave to a bank a writing, in which, after reciting that the stock had "all been recently purchased, and is now owned, by the subscribers, who desire and intend to continue the corporate organization, but not for the purpose of exempting themselves from their individual liability for the debts of the company," they declared that, " as to creditors of the corporation, we do and shall hold ourselves liable, jointly and severally, as copartners, and such liability shall continue as to each one so long as he shall continue a stockholder in said concern, but shall not apply to liability contracted after transfer of his stock." The bank then made two loans to the corporation, which it failed to repay, whereupon one of the signers repaid them, and sued for contribution the executors of the will of another signer, no transfer of whose stock had ever been made, and who died after the time of the first and before the time of the second loan. The will directed the executors to pay the testator's just debts, and empowered them to continue his estate in trade so long as they should deem for its interest in prosecuting and completing business undertakings which at the time of his death he was engaged in as copartner or on his sole account, and apply any part thereof " for the performance of any engagement, and the payment of any debts, notes and obligations, which have been made or incurred by me or by any copartnership of which I am a member." The plaintiff made his payment to the bank more than two

years after the executors gave bond, and brought the suit against the executors **within** a year after making the payment. *Held,* (1.) that the testator ceased by death to be a stockholder within the meaning of the writing, and was not chargeable thereon for the loan made afterwards; (2.) that, as to the loan made before the death, even assuming that the plaintiff's payment of it created a right of action which first accrued upon such payment, the special statute of limitations of actions against executors and administrators, Gen. Sts. *c.* 97, § 5, was a bar to the suit, from which he was not excepted under §§ 8–11, if he had omitted to present the claim to the judge of probate under § 8; and (3.) that the mere delay of the executors to dispose of and transfer the testator's shares would not warrant an inference of any election by them, in their discretion under the will, to continue the estate in trade or make any part thereof liable for debts or obligations contracted by any copartnership either before or after the death.

BILL IN EQUITY filed May 2, 1870, by William F. Bacon against Theodore Pomeroy, Robert Pomeroy, Henry Colt, and the executors of the will of William Pollock.

The bill alleged that said Pomeroys, Colt, Pollock in his lifetime, and the plaintiff, were owners of nine hundred and five shares in the capital stock of the Pittsfield Woollen Company, (a manufacturing corporation organized and established at Pittsfield under the general laws of this Commonwealth, and in accordance with the provisions of the St. of 1851, *c.* 133, and the acts in addition thereto, relating to corporations,) Pollock owning three hundred and twenty, the plaintiff one hundred and sixty, and the others the residue, specifying the number owned by each; that since May 3, 1862, none of said owners of said nine hundred and five shares had ever ceased to be a stockholder in said corporation or had transferred any of his said stock, and no certificate of any transfer thereof had been filed in the office of the town clerk of Pittsfield signed by the clerk of the Pittsfield Woollen Company; that on said May 3 said stockholders, to facilitate the business operations and aid the credit of the Pittsfield Woollen Company, and especially to give it a credit at bank, signed and delivered to the cashier of the Pittsfield Bank, for that bank, (a corporation created by the laws of this Commonwealth, and on June 10, 1865, reorganized as the Pittsfield National Bank under the laws of the United States,) the following writing:

" Whereas, the stock of the Pittsfield Woollen Company, a corporation organized under the general law of this state, has all been recently purchased, and is now owned, by the sub-

scribers, who desire and intend to continue the corporate organ-
ization, but not for the purpose of exempting themselves from
their individual liability for the debts of the company, now we
hereby declare to all whom it may concern, that as to creditors
of the corporation we do and shall hold ourselves liable, jointly
and severally, as copartners, and such liability shall continue a
to each one so long as he shall continue a stockholder in said
concern, but shall not apply to liability contracted after transfer
of his stock and a certificate thereof shall have been filed in the
office of the town clerk of Pittsfield, signed by the clerk of said
corporation. Dated at Pittsfield, the 3d day of May, 1862."

The bill then alleged that the bank had ever since held this
writing, as the contract of the joint and several liability of the
signers, as copartners, upon any and all liabilities of the Pitts-
field Woollen Company to the bank; that such liability con-
tinued, as to each of the signers, so long as he continued to be
a stockholder in the Pittsfield Woollen Company without hav-
ing transferred his stock and a certificate thereof having been
filed in the office of the town clerk of Pittsfield, signed by the
clerk of the company; and that this writing still was in full
force and effect, never having been rescinded or in any way
modified or abrogated; that upon the credit of the Pittsfield
Woollen Company and of the said signers, the bank, among
other loans to and transactions with the company, afterwards,
in Pollock's lifetime, made a loan to the company upon its
negotiable promissory note, dated January 9, 1865, and payable
in three months to the order of the bank, which had since been
renewed, from time to time, till October 15, 1869, on which date
the amount due thereon was $30,000 and it was again renewed
by a note of the company payable in three months, and also
made another loan to the company and took therefor its prom-
issory note dated December 24, 1869, for $10,662.71, payable
in three months, and continued to hold both said last named
notes till their maturity; that upon the maturity of these notes
the company neglected to pay them, and, notwithstanding de-
mand by the bank, had never made any payment on either of
them. Copies of the notes were set forth in the bill.

The bill further alleged that Pollock died December 9, 1866, testate, and on February 5, 1867, his will was duly proved and letters testamentary were issued to the executors named therein. This will, a copy of which was made part of the bill, appointed the executors trustees for certain purposes named therein, and contained the following provisions :

" I direct my executors to pay my just debts and funeral ex‧ penses, without unnecessary delay ; and for that purpose to sei. and convey any of my property, real and personal, (except my mansion-house estate hereinafter named,) which they may deem necessary. I authorize them to compound debts due me, and to compromise or submit to arbitration any claims made by or against them as my executors. And I give to them all the power over my property and estate, (except the said mansion-house estate,) for the purpose of winding up my business, that I should have if living. And if at the time of my death I am engaged in business undertakings, whether as copartner or on my sole account, which it would be inexpedient in their opinion to close at the time and in the manner usually adopted in the settlement of the estate of deceased persons, I empower them to continue my estate in trade for such period as they deem for the interest of my estate, for the purpose of prosecuting and completing such undertakings to the best advantage ; to use the credit of my estate, (with the above exception,) and to make any part thereof liable by mortgage, pledge or otherwise, for the performance of any engagements, and the payment of any debts, notes and obligations, which have been made or incurred by me, or by any copartnership of which I am a member, or which they may deem it necessary to make or incur, for the above purpose."

" I empower my trustees to sell or exchange any real or personal property at any time held by them upon the trusts herein declared, (excepting said mansion-house estate,) to make deeds and transfers thereof, and to invest the proceeds of such sale or exchange as they may deem expedient."

" Upon all sales by my executors or trustees, their receip shall exempt the purchaser from liability as to the application of the purchase money."

Bacon *v.* Pomeroy.

The bill further alleged that the executors on February 5, 1867, filed bonds with sureties approved by the judge of probate, and on February 4, 1868, filed in the probate office an affidavit that they gave notice of their appointment and acceptance thereof, within three months from February 5, 1867, by posting and publishing notices thereof as required by law, the form and manner of which were set forth in the bill.

The bill then alleged, that, upon the neglect of the Pittsfield Woollen Company to pay said two notes and interest thereon, or any part thereof, payment thereof was demanded by the bank of the plaintiff and of the defendants, and the defendants neglected and refused to pay the same, and, the bank persisting in demanding payment of the notes and interest, the plaintiff on April 27, 1870, paid the amount thereof and thereby became subrogated to all the rights of the bank, and entitled to demand and receive a contribution from the defendants towards the amount so paid by him and interest thereon, in accordance with the principles of equity and good conscience in such matters, and that each of the defendants (the executors being deemed together as one only) should pay and contribute the same in the proportion the number of shares held by each bore to the whole number of shares held by all the signers of the writing aforesaid; but that they had refused to do so, and pretended that the plaintiff was not entitled to demand and receive any contribution for such payments. And the bill prayed that they might be ordered to pay to the plaintiff the sums so due from them respectively or such other sums as might be found due to him.

The executors of the will of William Pollock demurred to the bill, for the following causes:

*First.* That the Pittsfield Woollen Company should have been made a party to the bill.

*Second.* That the plaintiff's remedy, if any, was at law, and not in equity.

*Third.* That any right or cause of action of the bank, or of the plaintiff, against these defendants, in their said capacity, growing out of the writing aforesaid or the payments made by the plaintiff, was barred by the statute of limitations.

*Fourth.* That upon the death of Pollock he ceased to be a stockholder in the Pittsfield Woollen Company, and his estate was liable, if at all, under the contract contained in the writing, for such demands only as then existed and not for any which afterwards accrued.

*Fifth.* That the plaintiff had not by his bill made a case which entitled him to the relief prayed for.

Upon this demurrer the case was heard by *Colt,* J., and by consent of the parties reserved for the consideration of the full court.

*M. Wilcox,* for the executors.

*B. R. Curtis & T. P. Pingree,* for the plaintiff.

GRAY, J. The agreement signed by the plaintiff and Pollock and their associates, upon which this bill is founded, recites that they have purchased and own all the stock in a manufacturing corporation established under the laws of the Commonwealth, that they desire and intend to continue the corporate organization, and have no purpose of exempting themselves from their individual liability for the debts of the company ; and declares that they shall hold themselves liable jointly and severally as copartners to its creditors, and that such liability shall continue as to each so long as he shall continue a stockholder.

At the date of this agreement, the St. of 1862, *c.* 218, subjecting the estate of a deceased person in the hands of his executor or administrator, to some extent, to his liability as stockholder for the debts of a manufacturing corporation, had not taken effect ; but the liability of the stockholders in such a corporation for its debts was regulated by the Gen. Sts. *cc.* 60, 61. It has been said that such statutes "in fact only continue the principle of copartnership in operation." Parker, C. J., in *Marcy* v. *Clark,* 17 Mass. 330, 334. But a partner is not ordinarily liable for debts contracted by his copartners after his death, unless there is an express stipulation to that effect in the partnership articles. *Marlett* v. *Jackman,* 3 Allen, 287. *Tyrrell* v. *Washburn,* 6 Allen, 466. And the statute liability of a stockholder for the debts of a manufacturing corporation is limited to debts contracted while he is a stockholder, and, as has been

repeatedly held, in the absence of express provision for its continuance, terminates with his death. *Child* v. *Coffin,* 17 Mass. 64. *Ripley* v. *Sampson,* 10 Pick. 371. *Dane* v. *Dane Manufacturing Co.* 14 Gray, 488.

In the light of these rules of law, the affirmative part of the agreement in question cannot, upon any fair construction, be held to make either of the subscribers liable for debts contracted after he has ceased by death to be a stockholder in the company. And no such extension of liability can be inferred from the negative clause, providing that he shall not be liable for debts contracted after a transfer of his stock shall have been made and recorded as therein prescribed. Taking the whole agreement together, this clause evidently contemplates only transfers made by himself in his lifetime.

This agreement, therefore, does not of itself charge the estate of Pollock with debts contracted by the company after his death. The question whether his executors can be held in this suit by reason of debts contracted in his lifetime requires further consideration.

By the special statute of limitations of actions against executors and administrators, no executor or administrator, after having given due notice of his appointment, shall be held to answer to the suit of any creditor of the deceased, unless it is commenced within two years from the time of his giving bond, except in the cases afterwards specified, namely, of new assets afterwards received, failure of an action by defect in form or service, rights of action accruing after the end of the two years and before the estate is settled, or where justice and equity require it and the creditor is not chargeable with culpable neglect. Gen. Sts. *c.* 97, §§ 5–11. St. 1861, *c.* 174, § 2. *Wells* v. *Child,* 12 Allen, 333. *Sykes* v. *Meacham,* 103 Mass. 285. Even a representation of the estate as insolvent, and the appointment of commissioners to receive and examine the claims of creditors, do not suspend the operation of the statute against claims not presented to the commissioners within the period of limitation, except in cases of contingent claims or of further assets. *Aiken* v. *Morse, ante,* 277.

The ground upon which the plaintiff relies to take his claim arising from his payment of the debt contracted by the Pittsfield Woollen Company in the lifetime of Pollock, out of the special statute of limitations is, that his right of action thereon did not accrue within two years after the giving of the administration bond, within the meaning of the Gen. Sts. c. 97, §§ 8–11.

The Gen. Sts. c. 97, § 8, provide that ",a creditor of the deceased, whose right of action does not accrue within two years after the giving of the administration bond," may present his claim to the probate court at any time before the estate is fully administered, and obtain an order that the executor or administrator retain in his hands a sum sufficient to satisfy the same, or that, instead thereof, a bond for payment of the demand may be taken, if offered by any other persons interested in the estate. By § 9, the decision of the probate court shall not be conclusive in favor of the claimant, and his claim shall not be paid, " unless it is found to be due in an action commenced by the claimant within one year after the. same becomes payable." By § 10, " the action shall be brought against the executor or administrator, if he has been required to retain assets therefor; otherwise, upon the bond given by the persons interested in the estate." And § 11 prescribes the form of the pleadings in an action on such bond.

The executors of Pollock deny that the payment by the plain-tiff of the sums due from him under their agreement created a right of action which first accrued at the time of such payment, within the meaning of these statutes. The question thus raised would require consideration, if the case turned upon it. See Gen. Sts. c. 99, §§ 5–7; c. 101, §§ 31, 32; *Cummings* v. *Thompson,* 7 Met. 132, 134 ; *French* v. *Hayward,* 16 Gray, 512 ; *Wood* v. *Leland,* 22 Pick. 503, and 1 Met. 387 ; *Hayward* v. *Hapgood,* 4 Gray, 437 ; *Fairfield* v. *Fairfield,* 15 Gray, 596. But it is not necessary, in order to dispose of this bill, to determine whether the plaintiff's right of action accrued after the end of two years from the giving of the administration bond. If it did not, it was clearly barred by the special statute of limitations. If it did, it is not brought within the exception to that statute

on which the plaintiff relies, because no application has been made to the judge of probate, as required by the Gen. Sts. *c.* 97, § 8; and, if such an application should be made, a bond might be offered and taken from persons interested in the estate, in which case, by § 10, no suit could be brought against the executor or administrator, but only against the persons giving that bond. *Holden* v. *Fletcher*, 6 Cush. 235. *Lovell* v. *Nelson*, 11 Allen, 101.

The plaintiff further relies upon the provisions of Pollock's will, to charge his estate with these claims. · But we are of opinion that neither the provisions of the will, nor any acts which have been done by the executors in pursuance thereof, are sufficient to have that effect.

The preliminary direction to pay all the testator's just debts adds nothing to the duty imposed upon all executors by law; and no executor has power to waive the special statute of limitations, even if he wishes to do so. *Wells* v. *Child*, 12 Allen, 333. *Lamson* v. *Schutt*, 4 Allen, 359, 360.

A testator may doubtless subject his estate to liability for debts contracted after his death by a partnership of which he has been a member. But such liability can be created only by clear provisions of the will, or unambiguous acts of the executors or trustees under an authority thereby conferred upon them. *Ex parte Garland*, 10 Ves. 110. *Burwell* v. *Mandeville*, 2 How. 560. *Stanwood* v. *Owen*, 14 Gray, 195. It is not pretended that these executors, in the exercise of the discretion vested in them by the testator, have done any affirmative act, manifesting an intention to continue the estate in trade, or to make any part thereof liable for any debts or obligations made or contracted by any copartnership, either before or after his death. Their mere delay in selling the shares in the Pittsfield Woollen Company, in which, for the reasons already stated, he had ceased by his death to be a stockholder within the meaning of the agreement sued on, will not warrant the inference of such an election.

As neither the terms of the agreement signed by Pollock, nor the provisions of his will and the conduct of his executors, sustain this bill to enforce the payment, out of his estate, of the

plaintiff's claim, whether arising out of debts contracted during his lifetime, or out of rights accrued since his decease, it is un necessary to decide whether the demurrer for the nonjoinder of the Pittsfield Woollen Company is well taken.

*Demurrer sustained.*