## RAYNES & A. v. RAYNES & A.

The will of G. R. contained the following provision : " I order and direct that the remainder of my ship-yard, from and *after* the death or marriage of my wife, shall be used and managed to the best advantage for the equal benefit of my three sons."   *Held*, that this provision cannot be construed as directing the manner in which it should be used *before* her death or marriage.

Evidence of a parol request or direction by a testator to carry on a certain business after his decease for the benefit of his family is inadmissible. The powers and duties of trustees under a will cannot be controlled by such evidence.

A trustee under a will (who was also one of several *cestuis que trust*) was indebted to the testator at the time of his decease.   Whether in case

it should appear that he became insolvent prior to the decease of the testator, the amount of such indebtedness should be deducted from his share of the income of the trust-fund, *quære?*

Where a testator provided that the trustees under his will might transfer to his sons certain of his property upon credit and upon their giving ample security therefor; and where one of his sons, at his decease, was indebted to him in a certain sum which the trustees neither attempted to collect nor to obtain security for—*Held,* that the trustees were chargeable with a breach of trust to an extent equal to the amount which might have been collected.

If a trustee who is entitled to a share of the income of the trust-fund wastes the estate, his share of the income is to be applied, first, to make good the deficiency in the income, and second, the deficiency in the trust-fund.

In a suit to sequester the shares of trustees who have wasted a portion of the trust-estate, a part trustee, who is not entitled to any portion of the income of the trust-fund, is not a necessary party to the proceeding where no decree is made against the general property of any trustee or beneficiary, but a decree is made merely to regulate the temporary disposition of the income of the trust-fund.

In such a suit, when the amounts lost by the mismanagement of the trustees are so great that the defendants' shares of the income of what is left are and always will be far too small to make up the shares of the plaintiffs, it is not necessary to have an accounting to ascertain the precise amount of the deficiency.

BILL IN EQUITY, by Ellen Raynes, Emma Raynes, and Ida R. Palfrey against George Raynes, Eleanor Raynes, and Nathaniel K. Raynes. George Raynes, a shipbuilder of Portsmouth, husband of said Eleanor, and father of the other parties, died in April, 1855, leaving a will which was dated June 3, 1854, and proved May 8, 1855. The will contains the following provision :

"I give, devise, and bequeath unto my wife Eleanor, Horton D. Walker, and my son Nathaniel K. Raynes, all my estate, both real and personal, to have and to hold the same for and during the term of the natural life of my children, and the survivors of them, and the survivor in trust, for the following named uses and purposes; that is to say, to sell my stock on hand, and my interest in ships and other personal property, excepting what may be needed for use, and investments paying interest, as and when favorable opportunities occur, and invest the proceeds thereof in some sound and productive stocks of good standing, the interest and income of which, with the income of all other property, or such part thereof as may be needed, shall be appropriated for the support and benefit of my wife Eleanor so long as she shall remain my widow, and my children, Nathaniel K. Raynes, George Raynes,

William H. Raynes, Ellen Raynes, Emma Raynes, and Ida Raynes, for and during the term of their natural life and the natural life of the survivors and survivor of them."

The will further provides, that, at the death or marriage of his widow, his house and garden, etc., shall be appropriated for the equal benefit of his three daughters, or such of them as shall then be unmarried, and so long as they shall remain unmarried, and to such one or more as shall remain unmarried, together with the furniture therein. His house-lot, garden, and ship-yard constituted one lot, or two adjoining lots.

The will also has the following provisions : "And I order and direct that the remainder of my ship-yard, from and after the death or marriage of my wife, shall be used and managed to the best advantage for the equal benefit of my three sons * * and their respective children, *per stirpes* and not *per capita*, and if either of them shall decease without children, for the benefit of the survivors or survivor of them, so long as any of my children shall survive. I further order that, if my son, George Raynes, shall elect to purchase the stock in my ship-yard, the same shall be transferred to him at a fair valuation, upon his giving ample security therefor, for the benefit of the other heirs interested therein ; and I order and direct that my other two sons * * shall each have a corresponding amount of credit, if they desire it, upon the same terms of ample security. When all my children shall have deceased, said trust shall cease and determine, and I give, devise, and bequeath all the rest, residue, and remainder of my estate, in equal parts, to and among the children of my children then alive, and the legal representatives of such as shall have deceased, *per stirpes* and not *per capita*, to them, their heirs and assigns, forever. And I do hereby authorize and empower said trustees from time to time to change any investment when they shall be of the opinion that it will promote the interest of my children, and to sell and convey any real estate when they and a majority of my children shall deem proper, and hold the proceeds upon the same trust and to the same uses that such real estate would have been held if not sold. And if said trusts shall become vacant by reason of death, resignation, or marriage of my wife, I authorize and request the judge of probate * * with the concurrence of a majority of my children, to fill vacancies." W. H. Y. Hackett was appointed executor, and he turned over to the trustees the following personal property thus described in his account :

1855, July 20. Amount due from Nathaniel K. Raynes, transferred to trustees,      $12,553.46

This amount remaining in the hands of George Raynes and son, in accordance with the arrangement of the testator and in obedience to the order of the trustees,      25,535.51

Cash paid trustees on account sale brig Ida Raynes,      $11,710.41

Balance of proceeds sale brig Ida Raynes, transferred to trustees,      2,087.09——13,797.50

| | |
|---|---|
| Amount brought forward, | $51,886.47 |
| 25 shares Rockingham bank, transferred to trustees, | 1,430.00 |
| ⅛ of ship Orient, transferred to trustees, | 10,000.00 |
| ⅛ of ship Webster, " | 10,000.00 |
| ¼ of brig Samuel B. " | 600.00 |
| 1 horse, 1 cow, carriage, harness, and wagon, transferred to trustees, | 425.00 |
| Furniture in dwelling-house, transferred to trustees, | 925.00 |
| Cash paid trustees at eleven times, from Sept. 3, 1855, to April 1, 1859, | 6,418.31 |
| | $81,684.78 |

The house and ship-yard are probably worth from $10,000 to $20,000.

At the October term, 1871, in this suit, the personal estate having been reduced from the apparent amount of $81,684.78 to $8,000 or $10,000, more or less, the trustees were removed in accordance with the prayer of the bill, and Wm. H. Rollins was appointed sole trustee, and thus one of the objects of the bill was accomplished.

Horton D. Walker took no active part in the management of the trust. At the time of the testator's death his ship-building business was carried on in the name of Geo. Raynes & Son, and there was a ship on the stocks in process of construction, and half built. The defendant, George, was in partnership with his father, but he furnished no part of the capital, and it does not appear that he had any interest in the capital, that there were any profits for him to have an interest in, or that there has been any settlement of the partnership affairs between him and the estate. He continued the ship-building business in the name of George Raynes & Son (building four or five ships, besides finishing the one on the stocks) about four years, until May 23, 1859, when he failed, not having the skill of his father, and the shipping business having greatly declined and become unprofitable. His debts were about $20,000. On a compromise the creditors received about 90 per cent. of their claims, which 90 per cent. was raised

| | |
|---|---|
| From sale of materials in the ship-yard, about | $6,000 |
| From Western securities belonging to the trust fund, about | 6,000 |
| From 60 shares Bank of N. H., belonging to the trust fund, | 6,000 |
| | $18,000 |

Walker resigned the office of trustee in September, 1859. At the time of the failure he refused to act, because he feared he should come under some personal liability. The defendant, George, was appointed trustee in his place in accordance with the will. The testator had loaned money to Nathaniel, which he used as capital in the ship-chandlery business, which he continued to carry on till after his father's death. February 22, 1865, upon a submission to arbitration by Eleanor, Nathaniel, and George of the claims of Nathaniel against the estate and of the estate against him, the arbitrators awarded that there was $5,690.65 due from Nathaniel on his note to his father's

estate. In making this award the arbitrators included all claims on both sides, and the share of Nathaniel in the income of the estate up to January 1, 1864, casting the interest on both to October 1, 1864. Since the award Nathaniel has paid nothing to and received nothing from the estate. William H. died in September, 1868, intestate and unmarried. The bill charges that the trustees have received all the personal estate to the amount of $81,685.30, and the income thereof; that they took possession of all the real estate, and have received the rents and profits thereof; that they have not invested the personal property in sound and productive stocks of good standing, but have mismanaged and lost the greater part thereof; that they permitted the defendant, George, to take all the stock in the ship-yard and other property of the estate, and allowed him to apply it to his own use without giving any security therefor; that by misfortunes and mismanagement in business the same was lost by said George; that the trustees permitted Nathaniel K. to have and use in trade as a ship-chandler other personal property of the estate without requiring or taking security therefor, whereby said property was lost.

The bill prays for an account, and that the income of so much of the estate as remains or may be recovered may be appropriated and paid to the plaintiffs until their shares shall have been fully made up to them; that the trustees may be required to make up the trust-fund to the full amount for which they are chargeable, and to invest the same as directed by said will; that the shares of the trustees in the income of the personal and real estate may be sequestered for this purpose; that the defendants may be removed from said trust; that other trustees may be appointed in their stead, and authorized to sell the real estate, and for general relief.

The answer of George Raynes denies that as trustee, severally or jointly, he has wasted, or suffered to be wasted or misapplied, any part of the estate of the testator held in trust; claims that he has received less than his share of the income; prays that the balance due him may be ascertained by this court, and that the other defendants may be ordered to pay it to him; alleges that the testator, at the time of his decease, was engaged in ship-building, a business then very profitable, and by which he had made his estate; that this defendant was in partnership with him, and he left one or more ships in the process of construction, and that this defendant, as surviving copartner, and in accordance with and fulfilment of an arrangement with the testator, continued the business for the benefit of the testator's family, and with the knowledge and approbation of the trustees, legatees, and heirs at law, and the plaintiffs; that, owing to a change in the times and the value of ships, some losses were sustained in said business.

The answer of Nathaniel admits that the executor turned over to the trustees all the personal estate of the testator; denies the other allegations of the bill above recited; alleges that he has not received from the estate, since 1855, exceeding the sum of $250; that for a short time after the testator's death, the defendant, George, did make

money in the ship-building business, which was appropriated to the use of the plaintiffs and their mother; that his subsequent losses were properly chargeable to and paid out of the estate of the testator, as he was carrying on the business as his father's partner and successor for the joint benefit of all parties interested in the estate, with other allegations similar to those in the answer of George.

As the plaintiffs do not in fact desire any decree against their mother, the defendant Eleanor, touching her share of the income, it is not necessary to consider her answer.

And as George and Nathaniel have no other property than their interests in the trust-estate, the plaintiffs desire if possible to secure so much of the income of said estate now remaining as they are entitled to, without being at the cost of proving themselves entitled to a decree requiring the defendants to make up the whole amount of principal and income that has been lost; claiming that they now are, and, if they survive the said Eleanor, will be, entitled to all the income of all the estate that is left, in consequence of losses resulting from the defendants' mismanagement and breach of trust.

At the October term, 1871, a master was appointed to state the accounts, who died since the last term, without any hearing of the case. At this term, against the defendants' objection, the court refused to appoint another master, and, proceeding to a hearing upon the general merits of the case, found the facts and made the rulings herein stated, for the purpose of bringing the cause to a speedy termination.

The testator's family continued to live in the house after his death the same as before. No money was paid to the plaintiffs, but they and their mother were supported and the expenses of house-keeping were borne by money received by the mother from the defendant George, who occupied the ship-yard and counting-room as his father had done before him. As there was no evidence that George ever had any property except his interest under the will of his father, the court concluded that said money received by the mother was part of the trust-property. The court was of opinion that if the trustees had exercised ordinary care and prudence in the performance of their duty under the will, they would, immediately after the testator's decease, have sold the unfinished ship and the stock in the yard, and would not have permitted George to continue the business as he did, unless he had elected to purchase the same, giving ample security therefor according to the provision of the will; that if George had any interest in said unfinished ship and stock, the trustees should have taken the proper steps to obtain the value of the testator's interest therein and to invest the same, or to obtain ample security as required by the will; that the legal duty of the trustees under the will was not modified by a parol request or direction given by the testator to George that he should continue to carry on the business for the benefit of the family; and the court so ruled, and the defendants excepted.

As to the claim of the defendants that George continued the ship-building business with the assent of the plaintiffs, the court finds the

facts to be, that the plaintiff Ellen was of age when her father died; that Emma was born May 27, 1840; that Ida was born March 27, 1848; that they knew that George continued the business, and neither of them made any objection to his doing so; that they did not know what their rights were in the estate, nor that George was assuming, and the trustees permitting him, to continue the business at the risk of the estate; that they relied for the proper management of their interests entirely upon those to whom the management had been entrusted by their father and by the law. The court ruled that upon this part of the case there was no assent of the plaintiffs which could be any answer to the bill; and the defendants excepted.

As to the claim of the plaintiffs that part of the property was lost in consequence of the trustees' permitting Nathaniel to have and use it in trade, without requiring or taking security therefor, the court finds those facts proved, the property having been received by Nathaniel from his father, and the trustees allowing him to keep it without giving the security required by the will. The court was of opinion that in this particular there was a want of ordinary care and prudence on the part of the trustees. The court ruled that Nathaniel is not entitled to any of the income of the estate until each of the plaintiffs shall receive an amount at least equal to $5,690.65, the sum found due from Nathaniel to the estate, regard being had to the interest cast by the arbitrators, and to the fact found by them that Nathaniel is to be considered as having received $5,690.65, besides his share of the income up to January 1, 1864; and the defendants excepted.

The court finds that shipping as well as ship-building was a hazardous business, in which property held in trust under this will ought not to have been allowed to remain; that the value of the testator's ships turned over to the trustees by the executor was almost entirely lost by the trustees' keeping the same after they should have sold them.

The court ruled that the plaintiffs are entitled to have so much of the income of all the remaining property appropriated to their use as would make their income equal to what it would have been had none of the estate been lost by the mismanagement of the trustees, until such income is fully made up to them; that the plaintiffs are entitled to have the defendants' shares of the income of the personal and real estate sequestered for this purpose; that, as the amounts lost by the mismanagement of the trustees are so great that the defendants' shares of the income of what is left are, and in all probability always will be, far too small to make up the shares of the plaintiffs, it is not necessary now to have an account the obtaining of which would cause expense which the plaintiffs by reason of the defendants' mismanagement are poorly able to bear; that the trustee heretofore appointed by this court should be authorized to sell all the real estate, the plaintiffs, a majority of the testator's children, by their prayer for a sale in the bill, having assented to such sale; that the proceeds of the sale of the house, garden, etc., appropriated by the will for the benefit of the unmarried daughters at the death or marriage of their mother, should be kept as

a separate and distinct fund, and the income thereof be paid to the unmarried daughters; that the proceeds of the sale of "the remainder of the ship-yard" appropriated by the will to the benefit of the sons after the death or marriage of their mother, should be kept as a separate and distinct fund, and the income thereof be paid to the plaintiffs, or to their mother during her life of widowhood, and then to the plaintiffs, or otherwise, as the court at the law term shall order; that if the plaintiffs consent that any of the income of the estate be paid to their mother during her life and widowhood, the plaintiffs will be entitled to it after her death until their shares are made up; that nothing should be paid to George or Nathaniel until the further order of the court upon an account and adjustment of the estate and income; that a decree should be made without any further hearing, and the case marked on the docket "not to be brought forward;" and that at any future time the case may be brought forward on motion of any party interested, and such further decree made as the state of things then existing may require.

To all the rulings and findings of the court the defendants excepted, and all questions of law arising thereon are reserved. The court reserved the question whether evidence of a parol request and direction of the testator made to George to continue the ship-building business for the benefit of the family after the testator's death is competent in this case. If it is competent, the court finds that there was such a request and direction to finish the ship then on the stocks, but no such request or direction to build other ships. The will and other papers and records used at the trial are part of the case, but not to be printed.

Such interlocutory and final orders and decrees are to be made at the law term as the court shall deem proper.

The questions arising on the foregoing case were reserved for determination by the whole court.

*Hatch,* for the plaintiffs.

*Goodall,* for N. K. Raynes.

*W. H. Y. Hackett,* for George and Eleanor Raynes.

*PER CURIAM. We need not consider whether, under the terms of the will, the beneficiaries would necessarily have each been entitled to an equal share of the income if part had been rich and part poor. For, in view of the facts which appear as to their past, present, and probable future condition, the conclusion must be, that each, in the absence of misappropriation or mismanagement, has been, is now, and probably always will be, in need of an equal share of the income for his or her

---

* The opinion in this case was prepared by Mr. Justice JEREMIAH SMITH before he retired from the bench, and was delivered substantially as drawn up by him.

support.   The case may, therefore, be practically dealt with as though the trustees had been directed to expend an equal share of the income for the support of each beneficiary.

The direction in the will as to the management of the ship-yard *after* the death of the wife cannot be construed as directing the manner it should be used *before* her death.   In *Bacon* v. *Pomeroy*, 104 Mass. 585, it was held, GRAY, J., that " a testator may doubtless subject his estate to liability contracted after his death by a partnership of which he has been a member.   But such liability can be created only by clear provisions of the will, or unambiguous acts of the executors or trustees under an authority thereby conferred upon them."

In *Wightman* v. *Townroe*, 1 M. & S. 412, the executors of a deceased partner continued his share of the partnership property in trade for the benefit of his infant daughter.   Held, that they were liable upon a bill drawn for the accommodation of the partnership and paid in discharge of a partnership debt, although their names were not added to the firm, but the trade was carried on by the other partners under the same firm as before, and the executors, when they divided the profits and loss of the trade, carried the same to the account of the infant, and took no part of the profits themselves.   Lord ELLENBOROUGH, C. J., said " the fund subsisting at the death of the testator, under a due administration of the will, should have been disposed of by the executors, and converted into money, and distributed as assets.   Instead of that it is embarked *de novo* in the trade in the purchase of other barley and a variety of other contracts, to which the infant is not privy, nor bound by them, but may renounce when she comes of age, as *damnosa haereditas*.   If, then, the infant has such an opportunity, who but the executors can be liable ? "   And judgment was rendered for the plaintiff.

Evidence of a parol request or direction of the testator to George Raynes to carry on the business for the benefit of the family, was incompetent.   It did not control, abridge, or vary the powers and duties of the trustees, who could not look beyond the will for instructions, and who, even if bound by a *contract* on the testator's part for the future management of the business (as to which we give no opinion), certainly were not bound by anything short of a contract.   The court found no " contract," only " a request and direction " to finish the ship then on the stocks, but no such request or direction to build other ships.

The direction in the will to sell and invest was explicit.   The court found the trustees negligent in not doing so, and found no contract of the testator overriding the will.   The trustees are therefore chargeable for their failure to sell and invest.   See Perry on Trusts, secs. 440, 441, 460, 462.

As to Nathaniel K. Raynes having and using part of the property in trade, it seems that he received property on credit from his father, and that the trustees allowed him to keep it without giving security.   If he had become insolvent before his father's death, so that nothing could

then have been collected of him, it might deserve further consideration whether such indebtedness should be deducted from his share of the income of the trust-fund. But we do not understand the findings of the court to be such as to raise this question. As we interpret the findings, the trustees could, by using ordinary care, have collected part, if not all, of the debt. If they could have done so, they are chargeable with a breach of trust to an extent equal to the amount which might have been, but was not, collected. If it be conceded that this was not giving " a credit" to Nathaniel K. within the meaning of the will, it was none the less a breach of trust, for, irrespective of the " credit" clause, it was the duty of the trustees to collect the indebtedness and invest it safely. In a word, if the trustees allowed him to keep it as " a credit" given him under the will, they are chargeable for not insisting upon having the " ample security " required by the will; if, on the other hand, they did not allow him to keep it as " a credit," they are chargeable for not collecting and investing it.

N. K. Raynes, a trustee, and himself one of the *cestuis que trust*, has concurred in several breaches of trust, and has reaped the benefit of these breaches. George Raynes, one of the *cestuis que trust* (and since made a trustee), has concurred in one of these breaches, and made use of the funds thus misapplied. The court ruled that the innocent *cestuis que trust* (the plaintiffs) were entitled to have Nathaniel and George's shares of the income sequestered *pro tempore*, and the entire income paid to the plaintiffs until the plaintiffs' income is made up to what it would have been had none of the estate been lost by the mismanagement of the trustees.

Waiving for the present all matters of detail, we proceed to consider the broad question whether the court can thus sequester the income of one who, either as trustee or *cestui que trust*, has concurred in a breach of trust.

It is objected that the testator gave a share of the income for the support of these two *cestuis que trust*, Nathaniel K. and George, and that this income cannot be appropriated to pay their debts.

That their shares of the income could not be taken to pay their general debts may not be quite so clear upon the authorities as the defendants may have supposed. 4 Kent's Com., 12th ed., 131, note 1 ; *ib.* 311, *b.*; 2 Story's Eq. Jur. 974, *a;* Perry on Trusts, sec. 555 ; *addenda* cix, cxi ; *Upham* v. *Varney*, 15 N. H. 462. But it is unnecessary to enter upon this inquiry. It is not now proposed to apply their shares of the fund to pay their debts to other parties, but to pay their debts to the fund itself. Here has been a wasting of much the larger part of the trust-fund. The question is, On whom shall the consequent loss of income fall ? Shall it fall on all the *cestuis que trust*, innocent as well as guilty, *pro rata?* or on those only whose misconduct has been the direct occasion of the deficiency ? The defendants cannot complain if they are made to bear the consequences of their own unjustifiable acts. They diminished the fund, and they must bear the loss thereby occasioned, rather than compel the innocent plaintiffs to share it equally with them.

It may be said that the testator intended that his children should all share equally, and that this result prostrates his intention. Undoubtedly it was the intention of the testator that all should share in the income of the fund, so long as that fund remained undiminished by the act of any of the beneficiaries; but it must have been equally his intention that no one of the beneficiaries should improperly diminish the fund. *Barnett* v. *Sheffield*, 1 De Gex, M. & G., 371. He did not intend that Nathaniel K. and George should continue entitled to claim the benefit of his bequest, at the same time that they practically repudiated the obligations thereby imposed on them. Nathaniel K.'s legacy may be said to have been given " under a condition, raised and implied by law, that he should duly fulfil the duties and obligations imposed on him by the instrument giving it." See KNIGHT BRUCE, vice chancellor, in *Morris* v. *Livie*, 1 Y. & Coll. 380, p. 388. So, too, George Raynes, even when (as at first) a beneficiary only, could not claim his interest except upon the condition of continuing loyal to the testator's directions. They stand somewhat in the same relation to the fund, that a party in contempt stands in to the court. The ·motions of the latter will not be listened to nor his claims passed upon till he has first purged himself of the contempt. Till then he has no standing in court. So Nathaniel K. and George Raynes cannot claim anything from the fund, till they have made good the deficiency in that fund for which they are responsible. They must first repair the breach of trust. They cannot ask the court to withdraw (at periodic intervals) the substantial means of reparation now under the control of the court, and leave the plaintiffs to seek other remedies which are likely to prove ineffectual. If these views are not correct, it would seem that, if George Raynes had improperly made way with 99-100 of the fund, he could still claim one sixth of the income of the remaining 1-100—a result which the court would be slow to sanction.

That the shares of Nathaniel K. and George Raynes in the income should be sequestered *pro tempore* to make good the deficiency they have improperly occasioned is clear on principle; and the authorities seem to point strongly in that direction. *Belknap* v. *Belknap*, 5 Allen 468, HOAR, J., is a case directly in point;—so, also, is *Morris* v. *Livie*, 1 Y. & Coll. 380;—see, also, *Skinner* v. *Sweet*, 2 Madd. 244; *Fuller* v. *Knight*, 6 Beav. 205; *Booth* v. *Booth*, 1 Beav. 126;—see, also, *Christian Stamler's estate*, 1 Tucker's N. Y. Sur. Rep. 42. That the diminution was not with criminal intent seems to us immaterial. It was none the less a breach of trust implicating all who concurred in it.

Upon the facts as found by the court, there was no acquiescence that would bar the plaintiffs. See Perry on Trusts, sec. 467.

In *Belknap* v. *Belknap*, 5 Allen 468, the share of income sequestered was applied to make good the deficiency in the principal of the fund. But in the present case we think it more just to apply it in the first instance to make good the deficiency in the income.

If the deficit in the fund were comparatively trifling in amount, it might be important to consider whether the plaintiffs, by allowing their

mother hereafter to receive her share of the income, will or will not thereby waive *pro tanto* the right to sequester the shares of Nathaniel K. and George Raynes. The mother was a trustee, and, it would seem, a participant in the breaches for which her two sons, George and Nathaniel K., are liable. If the question were material, our present impression is, that whatever the plaintiffs allow their mother to receive should be considered as so much paid to the plaintiffs themselves to make good the deficit in their income, and should be deducted from the amount which would otherwise have to be realized from Nathaniel K. and George's shares. For example,—suppose Nathaniel K., and George, and their mother all responsible for a deficit of one thousand dollars, and that the plaintiffs consent that their mother may receive her share of income (say fifty dollars per annum) for two years: the plaintiffs cannot then sequester shares of Nathaniel K. and George till a deficit of one thousand dollars is made up, but only till a deficit of nine hundred dollars is made up. By releasing one hundred dollars of the mother's income they exonerate Nathaniel K. and George's shares *pro tanto*. But we leave this point for future consideration, should it ever prove important.

Upon the facts found by the court, it would seem that Nathanial K. and George are respectively responsible for more loss than their shares of the income will ever make good, even if they are held for only two thirds of the losses for which they are respectively liable.

Walker's representatives are not necessary parties to this proceeding, unless the plaintiffs insist (as they do not) on further relief than that given them under the rulings at the trial. It is important to be observed, that the court are not proposing to make a decree against the general property of any trustee, beneficiary, or third person, but merely to regulate the temporary disposition of the income of the trust-fund. The representatives of a part trustee are not concerned in this matter.

The rulings as to making sales of the real estate were correct.

Taking the facts to be as found by the court, an accounting to ascertain the exact amount of *deficit* for which each defendant is responsible would be a useless task, the expense of which ought not to be imposed on the fund or on the plaintiffs. If the *deficit* is so large " that the defendants' shares of the income of what is left are, and in all probability always will be, far too small to make up the shares of the plaintiffs," what necessity is there of ascertaining the precise amount to a cent ?

The foregoing views are all based on the case as originally drawn by the judge who heard the cause at the trial term. There are motions for amendments, affidavits, documents, suggestions of error, and a motion for a rehearing. We think the motion for a rehearing should be decided by the judge who tried the case. If he decides in favor a rehearing, let it be granted ; if not, let a decree be drawn here, or at the trial term, in substantial conformity to this opinion.

It has not been thought best at this time to discuss the questions of law which may hereafter arise if the defendants should upon a rehear-

ing succeed in establishing some facts which they now claim that they can prove if opportunity is offered.

NOTE. The judge who tried the cause being of the opinion that there should be a rehearing, the cause was remanded to the trial term for that purpose.