THOMAS ASPINWALL & another, trustees, *vs.* CITY OF BOSTON.

MARY A. TAPPAN & another *vs.* SAME & another.

Suffolk.　January 9, 1906. — May 15, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Municipal Corporations. Contract. Mandamus. Way.*

*Semble,* that the officers of a city who have authority to lay out and construct highways and to assess betterments for their construction have power to make a contract in behalf of the city with one whose land is to be taken for a highway that betterments and damages for the taking of the land shall not be col-

lected until both can be determined so that they may be set off against each other and that the damages to be paid for the land shall be a stated sum.

A petition for a writ of mandamus is the proper remedy to compel a city to proceed with the construction of a street unreasonably delayed after it has been begun.

The owners of land in Boston over which it was proposed to lay out a street signed an instrument in writing stating that in consideration of the immediate laying out and construction of the proposed street at a certain width under the provisions of a certain statute, and of the delaying of the assessment of betterments until the amount of the damages caused to the signers by the taking of this land and the cost of the construction should be determined, and of the damages being offset against the proportionate part of the cost to be levied upon their respective estates, the owners of the land agreed that the payment of damages should be delayed until the balance due from each of them after making such offset had been determined, and further agreed to accept in payment for their land to be taken for the street certain prices per square foot there stated. The instrument was not signed by any one in behalf of the city. Thereafter the street commissioners made an order laying out the street and ordering that it be constructed, and assessed damages for the land taken according to the provisions of the instrument. The city began the construction of the street, did the necessary filling, put in water pipes and constructed a sewer in accordance with the order of the street commissioners, but did not complete the street in accordance with that order. No gutters, cross walks or sidewalks were built and no macadam was put upon the roadway. A reasonable time within which the street might have been finished long had elapsed. No betterments had been assessed. Some of the signers of the instrument brought an action of contract for the damages awarded to them by the street commissioners. Others of the signers filed a petition for a writ of mandamus to compel the city to finish the street. *Semble,* that the offer of the signers of the instrument, being apparently an advantageous one for the city, was one which its representatives lawfully might accept, and that if the city had performed its terms the offer would have become a contract binding on both parties, but *held,* that the city having failed to complete the street had not complied with the terms of the offer, and therefore that the signers were not bound by it and could recover their damages without waiting for the assessment of betterments, and that those signers who did not sue for their damages but petitioned for the writ of mandamus to order the city to complete the street were entitled as property owners and members of the public to have the writ issue. *Whether* if, after the completion of the street, the petitioners for the writ of mandamus should sue for their damages without waiting for the assessment of betterments, the city would be permitted to defeat the action by setting up its own neglect, *quaere.* HAMMOND, J. concurring in the result reached but not in the reasoning of the opinion.

CONTRACT for the amount of damages awarded to the plaintiffs by the street commissioners of the defendant, for the taking of land for Jersey Street in that city. Writ dated April 14, 1902.

In the Superior Court this case was heard by *Fox,* J. upon an agreed statement of facts and the exhibits referred to therein. He found for the plaintiffs in the sum of $20,323.20, and at the request of the parties reported the case for determination by this

court. If the finding for the plaintiffs was warranted, judgment was to be entered thereon; otherwise, such other order was to be made as law and justice might require.

PETITION, filed October 5, 1905, for a writ of mandamus ordering the city of Boston and its superintendent of streets to complete forthwith in accordance with the orders of the street commissioners the remaining work required to be done upon Jersey Street and Queensberry Street in that city.

This case came on to be heard upon the petition, the exhibits referred to therein, the answer, and an agreed statement of facts, before *Lathrop,* J., who at the request of the parties reserved it for determination by the full court, such decree to be entered therein as justice might require.

The material facts in both cases are stated in the opinion, the contract signed by the plaintiffs in the first case and by the petitioners in the second case there being quoted in full.

The cases were argued together at the bar in January, 1906, before *Knowlton,* C. J., *Morton, Lathrop, Hammond,* & *Sheldon,* JJ., and afterwards were submitted on briefs to all the justices.

*J. Barker,* (*O. D. Young* with him,) for the plaintiffs in the first case.

*H. W. Putnam,* for the petitioners in the second case.

*T. M. Babson,* for the respondents.

KNOWLTON, C. J. The first of these suits is an action of contract, brought to recover the amount of an award of damages made by the board of street commissioners of Boston for taking land for a public street. Jersey Street was laid out and ordered to be constructed by an order of the street commissioners, on July 15, 1898, and these plaintiffs were awarded damages in the sum of $14,382. On September 22, 1898, the city entered upon the land for the purpose of constructing the street, and began the work of filling, which was completed on December 17, 1898. The street has never been completed in accordance with the order of the commissioners. No gutters, cross walks or sidewalks have been built, and no macadam has been put upon the roadway, but the roadway has been left open and unobstructed, and has been used by persons desiring to pass through it, since January 1, 1899. These facts entitle the plaintiffs to receive the amount of the award, unless their action is barred by a contract

signed by them and others on March 25, 1897, as follows: "We the undersigned owners of land within the lines of a proposed street running at right angles with Boylston Street extension at a width of fifty feet from Audubon Road to Brookline Avenue, and being at its intersection with Boylston Street extension seven hundred thirteen feet more or less distant from Boylston Road as shown on a plan marked 'Back Bay Lands, Pierre Humbert, Jr., City Surveyor, April 10, 1894,' on file in the office of the city engineer of said city, in consideration of the immediate laying out and construction of said proposed street at the width of fifty feet, under the provisions of chapter 323, of the Acts of the year 1891, and acts in amendment or addition thereto, and of any assessments which may be levied upon our several estates for the cost of said laying out and construction being delayed until the damages caused to us severally by the taking of said land and the cost of the construction of said street shall be determined, and of said damages being offset against the proportionate part of said cost which may be levied upon our respective estates, agree that the payment for said damages shall be delayed until the balance due from us severally after making said offset has been determined.

"And we severally agree that we will accept as payment for so much of our said land to be taken for said street as lies within one hundred and twenty-five feet of said Audubon Road the sum of $3.00 per square foot and for so much of our said land as lies within one hundred and twenty-five feet of said Boylston Street extension the sum of $2.00 per square foot and for so much of our said land as lies within one hundred and twenty-five feet of Brookline Avenue the sum of $1.50 per square foot and for so much of our said land as lies within one hundred and twenty-five feet of Peterborough Street or within one hundred and twenty-five feet of Queensberry Street the sum of $1.50 per square foot and for the rest of our said land the sum of $1.00 per square foot. It being stipulated that the execution of this paper by any owner upon any copy of this agreement shall be tantamount to the execution of this original agreement, and that each owner signing this agreement makes no undertaking for anybody other than himself. Witness our hands and seals this twenty-fifth day of March, A. D. 1897." (Signed and sealed.)

The betterments have not been assessed, and the question is whether the plaintiffs are bound by this contract to delay the collection of their damages until the betterments can be offset. Water pipes were laid in the street in accordance with the order of the street commissioners, in the autumn of 1899. It is agreed that, allowing a reasonable time for surfacing and building the street, it could have been finished by the city as soon as January 1, 1900. A sewer, constructed through the street as ordered, was finished on December 17, 1903.

The fundamental question is whether the contract was of a kind that, upon acceptance by the city, might become binding upon the parties. It was not signed by any one representing the city of Boston, and no one had authority to make a contract for the city to do the things referred to in the writing. A street can be laid out and constructed only upon an adjudication of a tribunal acting officially, and determining that the public convenience and necessity require it to be laid out as a street. See *Somerville* v. *Dickerman,* 127 Mass. 272; *Parks* v. *Boston,* 8 Pick. 218. But a unilateral contract, offering to the city favorable terms as to land damages as an inducement to the laying out of a street, may be considered by the board charged with the duty of dealing with such matters, and may be accepted and made binding, by performance of that which is referred to in it as its consideration. *Crocket* v. *Boston,* 5 Cush. 182. *White* v. *County Commissioners,* 2 Cush. 361. *Boston* v. *Simmons,* 9 Cush. 373. *Bell* v. *Boston,* 101 Mass. 506. *Atkinson* v. *Newton,* 169 Mass. 240, 242, and cases cited. *Bartlett* v. *Boston,* 182 Mass. 460.

There is no doubt, in the present case, that the board of street commissioners acted upon this contract in making the order, and to that extent accepted it. They assessed the land damages according to the provisions of the contract. If the construction had been finished seasonably in pursuance of the provisions of the writing, there would have been a complete acceptance by performance, which would have bound the city, as well as the plaintiffs, provided the contract is such as the representatives of the city had a right to make. *First National Bank* v. *Watkins,* 154 Mass. 385. *Wellington* v. *Apthorp,* 145 Mass. 69, 73. *Cottage Street Church* v. *Kendall,* 121 Mass. 528. In regard

to the nature of the contract in this particular, the only ground for doubt is as to those provisions which require postponement of the collection of betterments until the damages caused to the several signers of the writing shall be determined, and prescribe a set-off of the damages against the betterments. This arrangement is not within the language of the R. L. c. 50, § 11, which authorizes an agreement for the assumption of the betterments by the city or town upon a release of the damages on terms agreed upon, but it resembles such an agreement, although it does not require the city to give up anything important. Where a city or town would have the advantage of delay in paying the damages, and of an agreement to accept a stated sum as damages, an arrangement that betterments and damages shall be set off against each other is not objectionable, provided the lien for betterments is preserved. Inasmuch as the street commissioners assessed the damages according to the terms of the agreement and the city authorities have carried the construction of the street almost to completion, we see no such risk of loss from the postponement of the collection of the betterments until the amount of the damages to these subscribers and the cost of the construction shall be determined, as should make the contract illegal. Upon such an assessment of damages under such an agreement as to the mode of assessing them, it is not possible that litigation to determine the amount could arise and be protracted in the courts. The statute postpones an assessment of betterments until after the construction has been completed, (R. L. c. 50, § 1,) and there need be no considerable delay in ascertaining the cost of construction.

We are inclined to hold that a contract of this kind may give such advantages to a city, and be so free from possible disadvantages, as to be binding, if the authorities, in laying out the street, and afterwards in constructing it, accept the offer.

An agreement not to assess betterments upon a particular estate, or to release the owner from liability for them, is a contract of a different kind, which can be made by the street commissioners only under and in accordance with the R. L. c. 50, § 11, as amended by St. 1902, c. 503.

Treating the contract as one under which the parties on both sides could bind themselves, we come to the fact that the street

was not completed in a reasonable time, and has not yet been completed. The time for taking appeals from the awards of damages expired long ago, and it is unnecessary to consider whether, on a performance of a part of the consideration, by laying out the street and assessing the damages according to the contract, the subscribers would be bound by their stipulation as to the mode of estimating these damages. . The important practical question is whether the stipulation as to the delay in collecting damages can be enforced against the plaintiffs, when the city fails to perform that part of the contract which calls for the immediate construction of the street. Upon the theory of the defendant, the city might prevent the plaintiffs from ever collecting their damages, by failing to complete the construction, and by neglecting or refusing to assess betterments. We think the agreement of the plaintiffs to delay the collection of the damages is dependent upon the acceptance of the offer by the city, by a performance of the entire agreement referred to in the writing, within a reasonable time. In order to hold the plaintiffs to their agreement, it was incumbent on the city, not only to complete the construction of the street promptly, but also to ascertain the cost and to make an assessment of betterments, so that the provision for a set-off might be applied to the facts. *Lowe* v. *Harwood*, 139 Mass. 133. The agreement of the plaintiffs to delay was made upon a condition that all this should be done within a reasonable time. On a failure of the condition, the agreement becomes inapplicable. It could not have been intended that the plaintiffs should wait indefinitely for their damages, until the city should choose to finish the work. Both upon broad principles of equity and a strict construction of the writing, we are of opinion that the plaintiffs are not obliged to delay the enforcement of their claim. They are entitled to recover the amount of the award, with interest from September 22, 1898. *Norcross* v. *Cambridge*, 166 Mass. 508, 511.

The second suit is a petition by other subscribers to this contract for a writ of mandamus to compel the authorities of the city to complete the construction of the street. It also includes another street called Queensberry Street, in reference to which there was a similar contract signed by these petitioners, and similar action was taken by the authorities of the city, and the

petition asks for a writ of mandamus to compel the construction of that street also.   As abutters desirous of an attractive street, as members of the public, and as claimants of damages for land taken, the petitioners are interested in having the street finished. The right of abutters to have a remedy of this kind, in such cases, if the facts warrant it, was considered and affirmed, with a citation of the authorities, in *McCarthy* v. *Street Commissioners*, 188 Mass. 338.   See also *Attorney General* v. *Boston*, 123 Mass. 460, 478.

In this case, as to both streets, both parties have acted upon the offer of these petitioners.   The city laid out each of the streets and assessed damages in accordance with the offer, and nearly completed the work of construction.   The petitioners delayed the collection of their damages, treating the contract relating to each street as accepted and binding.   Plainly they have a right to have the work finished, so that, as property owners and as members of the public, they can have the benefits which the streets were expected to confer.   They are entitled to these, without reference to the fact that the payment of the damages for taking their land has been delayed to await the completion of the work and the assessment of benefits.   Whether this delay furnishes an additional reason in law for granting the petition, we need not decide.   The petitioners have elected to treat the contract in each case as binding upon both parties, and it well may be that, upon complete performance of the work, the city will not be permitted hereafter to set up its own neglect, to defeat the rights of the petitioners growing out of the respective contracts, even though the petitioners might have availed themselves of this neglect, and might have treated the acts of the city as ineffectual to prevent them from collecting their damages.   On the facts agreed, there is no good reason why the authorities of the city should not proceed to complete the construction of each of these streets.

In the first case there is to be judgment for the plaintiffs; in the second case, a peremptory writ of mandamus is to issue.

Mr. Justice HAMMOND agrees to the result, but does not agree to the reasoning of the opinion.