HARTLEY AVERILL & another, trustees, *vs.* CITY OF BOSTON.

MARY A. TAPPAN, administratrix, *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    November 20, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, LORING, & SHELDON, JJ.

*Contract*, What constitutes, Performance and breach.  *Election.   Limitations, Statute of.   Municipal Corporations.*

The owners of land in a city, on which it was proposed to lay out a street, signed an instrument in writing under seal stating that in consideration of the immediate laying out and construction of the proposed street, and of the delaying of the assessment of betterments until the amount of the damages caused to the signers by the taking of their land and the cost of the construction should be determined, the owners of the land agreed that the payment of damages should be delayed until the balance due from each of them after offsetting the betterments had been determined, and further agreed to accept in payment for their land to be taken for the street certain prices per square foot there stated.  The instrument was not signed by any one in behalf of the city.  The city began the construction of the street but did not complete it within a reasonable time, and it was decided by this court in a previous case that the city having failed to complete the street had not complied with the terms of the offer of the landowners, which therefore never became binding on its signers, who accordingly could recover their damages without waiting for the assessment of betterments. The city was ordered by a writ of mandamus to finish the construction of the street before a certain day.  More than six years after the work of construction of the street was begun, and before any assessment of betterments had been made, some of the landowners who had signed the instrument, brought actions for their damages, to which the city pleaded the statute of limitations.  The plaintiffs contended that their causes of action arose within six years, namely, when after the expiration of a reasonable time the city had failed to complete the street, and that by such failure the plaintiffs were released from their promises, under seal, which they contended had been binding up to that time, not to sue for their damages until the betterments had been assessed.  *Held*, that the plaintiffs' causes of action accrued when the construction of the street was begun; that, if, waiving the city's delay in the work of construction, they elected to avail themselves of the instrument signed by them as being a binding contract, they must abide by all the terms of such contract and could not sue for damages until the betterments were assessed ; that if, on the other hand, they sought to set aside the instrument, because the city had failed to do that which would make it a binding contract, they must treat it wholly as a nullity, and their actions in that case were barred by the statute of limitations.

An offer under seal does not become a contract unless it is accepted.

THREE ACTIONS OF CONTRACT against the city of Boston for awards made by the street commissioners of that city for damages from the laying out of Queensberry Street and Jersey Street. Writs dated December 28, 1905.

In each of the cases the answer, among other matters, set up the statute of limitations.

In the Superior Court the cases came on to be heard together before *Fessenden*, J. In the first case, in which the plaintiffs, as trustees, claimed damages from the laying out of Queensberry Street, he ruled *pro forma* that the plaintiffs were entitled to judgment for the sum of $8,829 with interest from September 22, 1898, and accordingly ordered judgment for the plaintiffs in the sum of $12,890.30. In the second case, in which another plaintiff, as administratrix, claimed damages from the laying out of Queensberry Street, he ruled *pro forma* that the plaintiff was entitled to judgment for the sum of $14,251 with interest from September 23, 1898, and accordingly ordered judgment for the plaintiff in the sum of $21,661.52. In the third case, in which the same plaintiff as in the second case claimed damages from the laying out of Jersey Street, he ruled *pro forma* that the plaintiff was entitled to judgment for the sum of $14,451.50 with interest from September 22, 1898, and accordingly ordered judgment in the sum of $21,099.19. At the request of the parties he reported each of the three cases for determination by this court. In each case, if the ruling and order for judgment were right, the judgment was to stand ; otherwise, such judgment was to be entered therein as law and justice might require.

The cases were submitted upon agreed facts, which in the first and second cases, both relating to Queensberry Street, were the same, and were as follows:

1. On February 10, 1897, an agreement, dated August 17, 1896, a copy of which is hereto appended marked Exhibit C, executed by the plaintiffs Hartley Averill and Edwin B. Ginn, trustees, and by all other abutters upon a proposed street in Boston afterwards named Queensberry Street, was delivered to the board of street commissioners of Boston.

2. On July 15, 1897, the board of street commissioners after due notice of their intention so to do, and hearing thereon, duly laid out and ordered constructed a certain highway named

Queensberry Street by an order, a copy of which was appended, and took therefor certain land belonging to the plaintiffs as shown upon the Humbert Plan referred to in the order of laying out, and awarded to them as damages to their property by the laying out and construction of that street the sum of $8,829, in accordance with the terms of the agreement marked Exhibit C and with the prices of land therein stipulated to be paid them therefor.

3. On September 22, 1898, the city of Boston entered upon the lands taken by the order and began the filling of Queensberry Street for the purpose of constructing the street, and a reasonable and practicable time for completing and surfacing Queensberry Street in accordance with the order would have been until January 1, 1900. It was not then completed, the sewer called for by the order was not completed until November 5, 1903, and the street has not been completed or surfaced in accordance with the provisions of the order of the board of street commissioners. The street has never been posted as a private way but has been left open and unobstructed since January 1, 1899, and no betterment assessment has been laid for the street by the board of street commissioners.

4. The filling of Queensberry Street was begun on September 23, 1898, and was finished on January 28, 1899, using 58,222 cubic yards of filling at a cost of $29,693.22 for the filling and $3,638.85 for teaming, labor, material, and incidentals.

5. The construction of the sewer in Queensberry Street was begun on July 3, 1902, and was finished on November 2, 1903, at a cost of $50,194.98.

6. The laying of water pipes in Queensberry Street was begun on October 31, 1898, and was finished on November 24, 1898.

7. The gas pipes in Queensberry Street were laid in October, 1899.

8. The estimated cost of finishing Queensberry Street in accordance with the order of the street commissioners is $20,000.

9. Any further facts which appear in the suits of *Aspinwall* v. *Boston,* or *Tappan* v. *Boston,* [191 Mass. 441,] may be referred to and treated as facts in this case so far as material.

10. A writ of mandamus has been issued from the Supreme Judicial Court on May 22, 1906, commanding the completion

of Queensberry Street on or before December 1, 1906, upon a petition filed by the plaintiff and others on October 5, 1905.

## Exhibit C.

" We, the undersigned owners of land within the lines of a proposed street south of and parallel with Boylston Street extension in the City of Boston, and five hundred and ninety-seven (597) feet distant southerly and from the southerly line of said Boylston Street extension, and running at a width of fifty feet from Boylston Road in the Fens southerly to Audubon Road in said Fens shown on a plan marked 'Back Bay Lands, Pierre Humbert, Jr., City Surveyor, April 10, 1894,' on file in the Office of the City Engineer of said City, in consideration of the immediate laying out and construction of said proposed street at a width of fifty feet under the provisions of chapter 323, of the acts of the year 1891, and acts in amendment or addition thereto, and of any assessments which may be laid upon our several estates for the cost of said laying out and construction being delayed until the damages caused to us severally by the taking of said land and the cost of the construction of said street shall be determined and of said damages being offset against the proportionate part of said cost which may be levied upon our respective estates, agree that the payment of said damages shall be delayed until the balance due from us severally after making said offset has been determined.

"And we severally agree that we will accept as payment for so much of our said land to be taken for said street as lies within one hundred and twenty-five (125) feet of said Audubon Road or said Boylston Road the sum of three ($3.00) dollars per square foot and for so much of our said land as lies more than one hundred and twenty-five (125) feet from said roads the sum of one dollar ($1.00) per square foot.

" It being stipulated that the execution of this paper by any owner upon this agreement shall be tantamount to the execution of this original agreement.

" Witness our hands and seals this seventeenth day of August, A. D. 1896."

Here followed the signatures of different landowners, including in the first case those of the plaintiffs as trustees and in the

second case that of the plaintiff's intestate. There was no signature in behalf of the city of Boston. In the printed reports of the cases there was no designation of seals after the signatures, but in the defendant's answer in each of the three cases the instrument marked Exhibit C was alleged to have been executed by the plaintiffs and other landowners " under their hands and seals." See also *Aspinwall* v. *Boston*, 191 Mass. 441 at page 444.

In the third case the agreed facts differed from those in the second case in relating to Jersey Street instead of to Queensberry Street. In the third case the instrument marked Exhibit C was dated March 25, 1897. The material provisions were the same as in the corresponding exhibits in the first and second cases.

The filling of Jersey Street was begun on September 22, 1898, and was finished on December 17, 1898, using 45,000 cubic yards of filling, at a cost of $18,817.47 for the filling, and the further sums of $914.70 for labor, teaming, and materials, and $41.06 for labor and advertising.

The construction of the sewer in Jersey Street was begun by the city on August 29, 1899, and was finished on December 17, 1903, at a cost of $98,249.91.

The laying of the water pipes in Jersey Street was begun on August 29, 1899, and was completed on October 2, 1899.

In June, 1903, nine hundred and seven feet of gas pipe were laid in Jersey Street, from Boylston Street to Audubon Road, and on June 10, 1904, five hundred and forty-eight feet of gas pipe were laid in Jersey Street from Boylston Street to Brookline Avenue.

The estimated cost of finishing Jersey Street, in accordance with the order of the street commissioners, was $21,000.

*H. W. Putnam*, for the plaintiffs. 1. The agreements, being under seal, were irrevocable unilateral contracts binding without consideration. *Mansfield* v. *Hodgdon*, 147 Mass. 304, 307. *O'Brien* v. *Boland*, 166 Mass. 481, 483. *Willard* v. *Tayloe*, 8 Wall. 557, 564. *Graham* v. *Middleby*, 185 Mass. 349, 355. Those in *Crocket* v. *Boston*, 5 Cush. 182, *Cottage Street Methodist Episcopal Church* v. *Kendall*, 121 Mass. 528, and *Springfield* v. *Harris*, 107 Mass. 532, not being under seal, were mere revocable offers until performance of the consideration.

2. The agreements therefore prevented actions on the awards

until failure of condition subsequent by non-completion of the streets on January 1, 1900, and then became void, leaving the signers free until January 1, 1906, to sue without awaiting the assessment of betterments. *Aspinwall* v. *Boston*, 191 Mass. 441, 447. *Gray* v. *Gardner*, 17 Mass. 188. *Thayer* v. *Connor*, 5 Allen, 25, 27. *Hodsdon* v. *Guardian Ins. Co.* 97 Mass. 144, 147. *Semmes* v. *Hartford Ins. Co.* 13 Wall. 158. *New Haven & Northampton Co.* v. *Hayden*, 107 Mass. 525, 531.

*T. M. Babson*, for the defendant.

KNOWLTON. C. J. These are actions at law to recover in each case the amount of an award in favor of the plaintiffs, for the taking of land for a public street. Two of the cases relate to land taken for one street and the other relates to land taken for another street. One of the streets was laid out and ordered constructed on July 15, 1897, and the other on July 15, 1898. The land taken for each street was entered upon and the work of construction was begun on September 22, 1898. Apart from the contracts hereinafter referred to, the award in each case became payable on that day. R. L. c. 48, § 13. *Aspinwall* v. *Boston*, 191 Mass. 441. Each of these actions was brought on December 28, 1905, and the defendant has answered, among other things, the statute of limitations.

It is plain that the liability is of the kind that is barred under the general statute of limitations if no action is brought to enforce it within six years after the cause of action accrues. R. L. c. 202, § 2. The only ground on which the plaintiffs seek to avoid the effect of this statute is the existence of two contracts, in the same general terms, one pertaining to each street, signed by the plaintiffs and others in one case and by the plaintiffs' intestate and others in the other two cases, a copy of which is given in *Aspinwall* v. *Boston, ubi supra.* It was decided in the case last cited, upon facts that appear in these cases, that the contract was not binding upon the plaintiffs because the city failed completely to accept it by doing all that was to be done as a consideration for the promises contained in it. It was therefore held that the plaintiffs might recover the damages awarded for the taking of their land. That action was brought before the expiration of six years, and the statute of limitations was not applicable to it.

In *Tappan* v. *Boston*, heard at the same time, both cases being considered in the same opinion, it was decided that the petitioners might have a writ of mandamus to compel the completion of the streets, and it was intimated that, inasmuch as the petitioners had elected to treat the contracts as binding upon both parties, the city might not be permitted hereafter to set up its own neglect to defeat the rights of the petitioners growing out of the respective contracts, even though the petitioners might have availed themselves of this neglect, and have treated the acts of the city as ineffectual to prevent them from collecting their damages. It is agreed in each of the present cases that the city has been ordered by a writ of mandamus to finish the construction of the streets before December 1, 1906.

The plaintiffs now seek to set up these contracts as binding upon them, so far as to postpone the time when the cause of action accrued and to relieve them from the bar of the statute of limitations, and to set them aside in those parts which purport still to postpone the collection of their damages until there can be a set-off of benefits. This they cannot do. If they elect to avail themselves of the contracts, waiving the city's delay in the work of construction, they must abide by them in all their parts. If they elect to set them aside because the city has failed to do that which makes them binding, they must treat them as nullities. In the first place each writing was a mere offer, and it could be withdrawn at any time before it was acted upon in accordance with its terms. The city did not attempt to bind itself, and could not bind itself by an executory contract of this kind. *Aspinwall* v. *Boston, ubi supra,* and cases cited. The offer became binding only by the doing of the acts referred to, which were to furnish the consideration. *Cottage Street Methodist Episcopal Church* v. *Kendall,* 121 Mass. 528. *Crocket* v. *Boston,* 5 Cush. 182. *Springfield* v. *Harris,* 107 Mass. 532. It is not a bilateral contract, binding from the beginning, with a liability for a breach. If the city failed to act upon it so as to furnish the full consideration within a reasonable time, the plaintiffs might refuse to be bound by it. But in that event they could not retain the benefits of it, and use it to give themselves rights which otherwise they would not have in a future proceeding.

Apart from the contracts, the plaintiffs' claims are barred by

the statute of limitations.   Each contract must be taken as a whole.   If it is treated as of no effect because the consideration was not furnished, it cannot avail the plaintiffs to take the cases out of the statute of limitations.   If it is relied upon by the plaintiffs to prevent their right of action from accruing, they must take the consequences of its provisions which forbid the maintenance of an action before the betterments are assessed.

In each of the cases the entry must be

*Judgment for the defendant.*