JOSEPH S. CAPEN & others *vs.* LORANUS C. CAPEN & another.

Norfolk.    October 20, 1919. — January 7, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction*, Specific performance, To relieve from results of fraud. *Contract*, Validity, Performance and breach. *Equity Pleading and Practice*, Master's report, Appeal. *Trust*, What constitutes.

An agreement in writing among all the heirs at law and next of kin of one who had died intestate, to the effect that they would carry out as a will the provisions of a document, signed by the intestate without attestation but testamentary in purpose and purporting to dispose of all of the intestate's estate, is a proper subject of a suit in equity to compel specific performance by one of those who signed it.

After the plaintiff in a suit in equity had filed exceptions to a master's report, the report was recommitted to the master for findings of further facts and a report of certain evidence. No exceptions were filed to the supplemental report. There was a final decree dismissing the bill. The plaintiff appealed. *Held,* that it was not open to the plaintiff to contend that findings of fact in the supplemental report of the master were not warranted by the evidence.

In a suit in equity against one of the next of kin and heirs at law of one who had died intestate, for the specific performance of an agreement in writing by all of the next of kin and heirs at law relating to the distribution of the estate, the defendant contended that his signature to the agreement had been procured by false representations of one of the plaintiffs. The suit was referred to a master. The plaintiffs excepted to the master's report on the ground that he had failed to report "when the plaintiffs had notice of the repudiation of said agreement by" the defendant. It did not appear that there was any trial upon the question whether the defendant was estopped by laches from relying upon the fraud alleged to have been practised upon him or any testimony as to when he discovered the fraud. *Held,* that the exception must be overruled.

Failure, by the defendant in the suit described above, to testify in his own behalf did not as a matter of law preclude him from relying on any defence legally open to him.

The false representation upon which the defendant in the suit above described relied to invalidate the agreement sued on was to the effect that, unless the defendant signed the agreement, one of the next of kin, a woman, could not procure certain money which she had placed in the hands of the intestate. The plaintiffs contended that the representation was as to a matter of law and therefore was not a defence to the suit. *Held,* that it could not be said as a matter of law that the scope of the representation was so limited, since the right to recover the money from the estate of the intestate might have depended largely on facts in the knowledge of the plaintiff who made the false representation.

In the suit above described, there was evidence before the master to the effect that the intestate deposited $2,000, received as above stated, one half of it in a savings bank in his individual name and the other half in another bank in his name as trustee for the woman from whom he had received it; that, in the bank in which was the account in his individual name, there was another account of practically the same amount under his name as trustee for the same woman; that, in a writing signed by him previous to his death, the intestate had expressed a wish that the woman should have "the two bank books" in the savings bank where there were the two deposits, one in his individual name and one in his name as trustee for her, "as she gave me two thousand dollars." These facts were known to that plaintiff who stated to the defendant that the woman could not get back her $2,000 unless the defendant signed the agreement in suit. The master found that the representation was false. *Held,* that there was no necessary inconsistency between the finding and the evidence.

If, in a suit by several plaintiffs to enforce specific performance of an agreement in writing made by the defendant and the plaintiffs relating to the distribution of the estate of one who had died intestate and whose heirs and next of kin the plaintiffs and the defendant were, it appears that the execution of the agreement by the defendant was procured by fraud and false representations on the part of one only of the plaintiffs, who in such conduct was not acting as the agent for or in any way in complicity with the other plaintiffs, the suit may be main-

tained by those of the plaintiffs who were not parties to the fraud to enforce against the defendant whatever rights they have under the agreement.

An agreement by all of the next of kin of one who died intestate, to perform the provisions of an informally executed testamentary instruction of the intestate, is not without consideration if it appears that the promises were mutual, that three of the next of kin, in accordance with the wishes of the intestate so expressed, left their own home to take possession of and labor upon the homestead formerly of the intestate and changed their occupations and methods of life, and that another of the next of kin under the agreement was given $10.

Where, in a suit in equity for the enforcement of specific performance of a contract in writing, it appears that it is impossible to afford specific performance of the entire contract, relief may be given by enforcing it in part under appropriate circumstances.

In a suit in equity against a man and his wife, who with the plaintiffs constituted all of the heirs at law and next of kin of one who had died intestate, to compel specific performance of an agreement in writing made by all such heirs at law and next of kin to carry out the provisions of a document, informally executed by the intestate and containing testamentary directions as to his estate, the defendants in their answer alleged that they were induced to sign the agreement by false representations of one of the plaintiffs as to inability on the part of another plaintiff, a woman, to obtain money given to the intestate unless the agreement was signed. Neither of the defendants testified in terms that either of them had relied on the alleged false representation in signing the agreement. The man did not testify at all. The woman testified merely that she had told the woman who had given money to the intestate that she signed the agreement to save to such woman her money. *Held,* that a finding that the defendants relied on the misrepresentations was not warranted.

The suit above described was heard by a master. No exception to his report raised the question, whether a finding that the defendants relied on the misrepresentations was warranted. A final decree dismissing the bill was entered from which the plaintiffs appealed. *Held,* that the question, whether there was such reliance by the defendants on the false representations, was open on the appeal and properly might affect the conscience of this court in granting or denying relief.

In the suit above described, it appeared that the agreement sought to be enforced gave to three of the plaintiffs the intestate's farm and buildings, including a house and barn, personal property in the house and a certain savings bank deposit, and to one of the three personal property in the barn, various other savings bank deposits to five others of the plaintiffs and to a church, and $10 to the brother who was a defendant. The relief specifically asked for in the bill was that the defendants, the brother and his wife, be required to release the farm and buildings to the three plaintiffs in accordance with the agreement. The defendants asked for no relief either in their answer or by a cross bill. This court, on an appeal from a final decree dismissing the bill, ordered that the decree be reversed and *stated* that the relief asked for should be granted to the three plaintiffs, but that, the record not being satisfactory, it did not seem wise to make any other order than that the decree be reversed, thus giving to the parties an opportunity to move for the ascertainment of further facts.

BILL IN EQUITY, filed in the Superior Court on September 13, 1913, by Joseph S. Capen, Mabel J. Capen, William H. Capen,

Benjamin S. Capen, Lillian E. Capen, Georgiana E. Capen, Emily F. Capen, Elisha Capen, Harriet M. Jones and Louisa C. Thayer against Loranus C. Capen and his wife, Rhoda J. Capen, to enforce specific performance of so much of the agreement, set out below, relating to the distribution of the estate of Sanford E. Capen, late of Stoughton, who died intestate on July 10, 1910, as required the release to Emily, Georgiana and Elisha Capen of all interest in the farm property.

The suit was referred to a master. Material facts found by the master in a report and a supplemental report are described in the opinion.

The document, to which the agreement which is the subject of the suit referred, was dated June 18, 1909, was signed by the intestate without attestation and read as follows:

"I want Emily F. Capen, Georgiana Capen, Elisha Capen to have the farm and the buildings there, one each to have an equal share. And I would like to have them occupy it. Elisha to have the personal property in the barn, and to share with the sisters that, that is in the house.

Savings

"I want Louisa C. Thayer to have the two bank books in the North Easton Bank as she gave me two thousand dollars. I want Benjamin Capen and William H. Capen to have five hundred dollars each taken from the Brockton Savings Bank. Joseph Capen and Hattie M. Jones to have two hundred and fifty dollars each taken from the Canton Savings Bank. The Universalist Church to have five hundred dollars taken from the Canton Savings Bank, the interest to go toward paying for preaching annually. The principal not to be used. The Home Savings Bank deposit to be divided between Emily F. Capen, Georgiana Capen and Elisha Capen. Don't put a stone at the grave that costs over fifty dollars. Would like to have the funeral at the Universalist Church where all can be accommodated with seats. I don't like the way that Loranus has treated me so give him ten dollars."

The agreement upon which the plaintiffs relied was made on July 13, 1910, and is quoted in full in the opinion.

After the filing of the master's report, the plaintiffs filed the following exceptions thereto:

"1. That on the question of consideration for said agreement the

master did not report when the plaintiffs had notice of the re-
pudiation of said agreement by the defendants.

"2. That the master did not report the evidence relating to the
$2,000 referred to in said agreement as to the terms on which the
intestate received the money and what he did with it.

"3. That the master did not report the facts that the defendant,
Loranus C. Capen, did not testify at the hearing, and that no
evidence of anything that he said was introduced at the hearing.

"4. That the only defence open to the defendant, Loranus C.
Capen, in the absence of any testimony coming from him, is the
question of consideration.

"5. That the alleged false representations of Joseph S. Capen
were but expressions of opinion on questions of law.

"6. That it appears from evidence reported at the request of
the plaintiffs, that there was consideration for said agreement."

The report thereafter was recommitted to the master for a
report of further facts and evidence, as stated in the opinion. No
objection nor exception to the supplementary report was filed.

The suit then was heard by *Raymond*, J., upon the pleadings,
the report and the supplemental report of the master. By order
of the judge an interlocutory decree was entered overruling the
plaintiffs' exceptions and confirming both reports; and, on the
same day, a final decree was entered declaring the agreement
which is the basis of the suit "null and void" and dismissing the
suit with costs. The plaintiffs appealed.

The case was submitted on briefs.

*E. F. Leonard*, for the plaintiffs.

*F. G. Katzmann & P. Mansfield*, for the defendants.

RUGG, C. J. This is a suit in equity to enforce the specific
performance of an agreement. The defendants admit the signing
of the agreement, but defend on the ground that their signatures
were procured by misrepresentation and fraud.

Sanford E. Capen in June, 1909, signed a document, which is
set out on page 358, informal but testamentary in purpose and
purporting to dispose of his estate. Among other provisions in it
was this: "I want Louisa C. Thayer to have the two bank books
in the North Easton Bank as she gave me two thousand dollars."
He gave directions for the distribution of the rest of his estate
among relatives, concluding with this sentence: "I don't like the

way that Loranus has treated me so give him ten dollars." Loranus was a brother. He and his wife are the defendants.

The instrument was not attested by witnesses and hence was ineffective as a will. Sanford E. Capen died in July, 1910, intestate, leaving an estate of which it is alleged that the appraised value is slightly in excess of $7,000. On the day of his funeral all his heirs at law and their wives and husbands (with the exception of Benjamin A. Capen and his wife who signed later and are parties plaintiff) gathered at the residence of the deceased and signed an agreement of the tenor following: "We, the undersigned, heirs of Sanford E. Capen, deceased, of Stoughton, Norfolk County, Mass., hereby agree in each others' presence, mutually, that the annexed statement (a copy whereof is above set forth) with his signature shall be considered by us as his last will and testament and furthermore agree that Joseph S. Capen shall be appointed administrator provided he agrees in writing that he fulfil the instructions of said Capen and we agree that Louise C. Thayer shall be a tenant in common for her life with the said Emily, Georgiana, and Elisha Capen. And we severally agree as heirs and distributees of said estate to authorize said administrator to carry out the terms of said will and we hereby agree to hold him harmless on his probate bond in so doing and a copy of this agreement and his will be furnished each person signing."

This agreement has been performed in large part and perhaps entirely by the other parties, but the defendant Loranus, about October 1, 1912, declined to accept the $10 given him by the signed document of the deceased and both he and his wife have refused to sign deeds of the real estate essential for giving effect as a will to the document signed by the deceased, in accordance with the terms of the agreement. Thereupon this suit was brought to compel performance.

Such agreements, if not avoided for any legally sufficient cause, are proper subjects for specific performance. *Ellis* v. *Hunt*, 228 Mass. 39, and cases cited at page 44.

The case was referred to a master. The rule directed him "to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party may request." In his report occurs this paragraph: "I find upon the evidence that, as to the defendants, said agreement of July 13th,

1910, was without adequate consideration, that the signing of the same by the defendants was procured by the false representations of the plaintiff Joseph S. Capen to them, to wit: that one of the plaintiffs, Louisa C. Thayer, could not recover the sum of two thousand dollars which she had previously placed in the hands of the said Sanford E. Capen unless all the heirs signed said agreement and the further false representation to them that in order properly to probate the estate of said Sanford E. Capen it would be necessary for all the heirs to sign said agreement, both of which false representations the defendants believed to be true." Thereafter the case was "recommitted to the master with instructions to file a supplementary report covering the following matters: 1. What were the terms on which Louisa C. Thayer placed the two thousand dollars in the hands of Sanford E. Capen, and how was that sum used or invested by said Capen? 2. Did Joseph S. Capen when he made his representations to Loranus about the two thousand dollars know that his representations were untrue? 3. Did the defendants rely upon his representations? The master is further directed to report the evidence bearing upon these questions." The master's supplementary report in part was in these terms: "In compliance with the order of court recommitting this case to me as master I have to report upon the several questions submitted in the order as follows: '1. What were the terms on which Louisa C. Thayer placed the two thousand dollars in the hands of Sanford E. Capen and how was that sum used or invested by said Capen?' I find that after Louisa C. Thayer had sold her house she gave some money, $2,000 in amount, which she had received for the same, to Sanford E. Capen, $1,000 of which he deposited in the North Easton Savings Bank in his own name. The remaining $1,000 he deposited in the Brockton Savings Bank as Trustee for Louisa C. Thayer. Said $2,000 was paid to the said Sanford E. Capen by the said Louisa C. Thayer with the understanding that if she died first he was to have it but if the said Sanford E. Capen died first then she was to have it. '2. Did Joseph Capen when he made his representations to Loranus about the two thousand dollars know that his representations were untrue?' I find that the said Joseph S. Capen, when he made his representations to Loranus about the two thousand dollars, did know that said representations were not true. '3. Did the defend-

ants rely upon his representations?' I find that the defendants did rely upon his representations. And as directed in said order I herewith report the evidence bearing upon these questions." Then follows a report of the testimony of Louisa C. Thayer.

Her agreement with the deceased seems not to have been in writing. Her examination does not appear to have been directed toward the ascertainment of what was said between her and the deceased at the time the money was placed in his hands. Whether the evidence was sufficient to support the finding of the master, however, is not open upon this record. The plaintiffs filed no objections or exceptions whatsoever to the master's supplemental report. Therefore there is no objection or exception on the ground that the master's finding as to the terms of this agreement was not warranted by the evidence. Objection and exception even of this sort must be made as required by Equity Rules 31 and 32, or it is not open. *Roosa* v. *Davis,* 175 Mass. 117. *Hillier* v. *Farrell,* 185 Mass. 434. *S. K. Edwards Hall Co.* v. *Dresser,* 168 Mass. 136, 140. *Smedley* v. *Johnson,* 196 Mass. 316. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 493.

What has been said disposes also of the questions whether the finding respecting the knowledge of Joseph S. Capen of the falsity of his representations and the reliance of Loranus C. Capen on those representations are justified by the evidence reported.

The only objections or exceptions in the record are those filed to the original report. The first is failure of the master to report "when the plaintiffs had notice of the repudiation of said agreement by the defendants." It does not appear that there was any evidence on this point, or that there was any trial at all upon the point whether the defendants were estopped by their laches from relying upon the fraud alleged to have been practised upon them; or any testimony as to when they discovered the fraud.

The third and fourth exceptions relate solely to the failure of the master to report the evidence touching the agreement between the deceased and Louisa C. Thayer, and the fact that Loranus C. Capen did not testify. Both these exceptions have been rendered immaterial by the supplemental report covering both these matters.

The fourth exception is to the effect that the only defence open to Loranus C. Capen in the absence of any testimony from him is

the question of consideration for his signing the agreement. Such failure to testify, although important as bearing upon the weight to be given to his contentions, did not as matter of law prevent him from relying upon any legal defence to the suit. The inference cannot be pronounced irrational that this defendant was induced to sign the agreement through reliance upon the misrepresentations rather than through respect to the wishes of his brother as declared in the signed document. The final objection is that the alleged false representations were but expressions of opinion upon matters of law. It could not be ruled as matter of law that this was the limit of their scope. Whether Louisa C. Thayer could recover the sum of $2,000 from the estate of the deceased was a question which depended primarily upon the circumstances under which the money had been placed in his hands by her and the attendant conversations and agreements. The precise misrepresentations actually made by Joseph S. Capen to the defendants are not set forth by the master. They are described by him only in general terms. The report does not purport to set forth the evidence upon that point. For aught that appears, the misrepresentation may have consisted exclusively of statements of facts concerning the terms upon which the money had been deposited by Louisa C. Thayer with the deceased and the existence or non-existence of evidence respecting the terms of the deposit. Those facts may have been supposed to be far better known to Joseph S. Capen than to the defendants. The misrepresentation in general may have rested upon knowledge or pretended knowledge by Joseph S. Capen of facts or upon a combination of facts misstated and the law governing facts so colored rather than exclusively or chiefly upon a notion as to the law. It seems probable that in the aspect strongest in favor of the plaintiffs the representation related to the private legal rights of Louisa C. Thayer with respect to the estate of the deceased, and the consequent effect of those rights, whatever they were, upon the interest therein of the defendant Loranus C. Capen. The case upon this point comes within the principles declared, after exhaustive review of the authorities, in *Reggio* v. *Warren,* 207 Mass. 525.

It remains to consider whether there is anything in the record inconsistent with the final decree whereby the bill was dismissed.

There is no necessary inconsistency between the finding of the

master that the statement of Joseph S. Capen was false, to the effect that Louisa C. Thayer could not recover the $2,000 placed by her in the hands of the deceased unless his heirs signed the agreement, and the report of the evidence as to what were the terms upon which she placed that sum with him. It cannot be said that there was no evidence upon which a right of Louisa C. Thayer could be predicated to recover the $2,000 from the estate of the deceased. Although he had deposited one half of the money delivered to him by her in the North Easton Savings Bank in his own name and one half in the Brockton Savings Bank in his name as trustee for Louisa C. Thayer, there was evidence that he left another like trust deposit of a substantially similar amount in the North Easton Savings Bank. The form of these two latter deposits was expressive of a trust and some evidence of its existence. This circumstance, combined with the fact that the deceased had received that amount of money from her, and stated in the signed document that he desired it returned to her, would be enough to warrant a finding in her favor, although of course not necessarily decisive. *Farrelly* v. *Ladd,* 10 Allen, 127. *Supple* v. *Suffolk Savings Bank for Seamen & Others,* 198 Mass. 393, 397. *Moore* v. *O'Hare,* 224 Mass. 283, 285. See *Cleveland* v. *Hampden Savings Bank,* 182 Mass. 110.

It has not been argued that Joseph S. Capen did not know at the time of making the representation that it was not true. Such argument could not well be made in view of his testimony.

The defendants are not asking for any relief. Questions which might arise in such a case need not be considered.

The settlement of these points, however, does not dispose of the case. The misrepresentations were made by Joseph S. Capen. There is nothing to indicate that the other plaintiffs participated in that fraud. There is every presumption that they did not join in it. Fraud is never presumed but must be proved expressly or inferentially. It is not alleged in the answer that any other plaintiff than Joseph S. Capen misled the defendants. Nor is it alleged or shown that he acted as agent for the others or in any way in complicity with them. A cannot be relieved from the performance of his contract with B because of the misrepresentations of C. *White* v. *Graves,* 107 Mass. 325. No reason appears on this record why the misrepresentations of Joseph S. Capen should prevent the other

plaintiffs, innocent of any wrong on their own part, from enforcing against the defendants whatever rights they may have under the agreement.

If there may arise cases where inadequacy of consideration which shocks the conscience may be ground for relief, this is not such a case. There was consideration adequate to support the agreement of the defendants in the payment to be made to the defendant Loranus, in the mutuality of promises, in the compliance with the expressed wish of the deceased as to the distribution of his property and the detriment to those of the plaintiffs who gave up their own home to take possession of and labor upon the homestead of the deceased, and to change their occupation and methods of life, all in reliance upon the promise of the defendants. Whatever may be said as to any one of these elements alone, their combined effect affords a sufficient consideration for the agreement of the defendants. *Cottage Street Methodist Episcopal Church* v. *Kendall,* 121 Mass. 528. *Aspinwall* v. *Boston,* 191 Mass. 441, 445. *Williams* v. *Carty,* 205 Mass. 396. The case is distinguishable from *Chase* v. *Chase,* 191 Mass. 556. So far as concerns inadequacy of consideration, there is no ground for refusing specific performance. *New England Trust Co.* v. *Abbott,* 162 Mass. 148.

The master has found "That in pursuance of said agreement, the said administrator turned over the contents of the house to said Elisha, Georgiana, and Emily F. Capen, and the contents of the barn to the said Elisha; that the said Elisha, Georgiana, and Emily F. left their own home and took possession of the homestead of the late Sanford E. Capen shortly after the death of the said Sanford; and that they have carried on the farm and milk route of the intestate up to the present time; and that the said Elisha gave up his trade as a lather so to do." This shows a distinct detriment on their part in reliance upon the agreement. Whether it would be sufficient part performance under the statute of frauds need not be discussed. This agreement was in writing. All the circumstances constitute sufficient ground for granting specific performance. When it becomes impossible to afford specific performance of the entire contract, there may be relief as to a part of it under appropriate circumstances. *Adams* v. *Messinger,* 147 Mass. 185. *Tobin* v. *Larkin,* 183 Mass. 389. *Jones* v. *Brown,* 171 Mass. 318.

The finding that the defendants relied on the misrepresentations appears to be unsupported. One defendant testified that she had told Louisa C. Thayer that she signed the agreement to save her her $2,000. She did not testify that she in fact did sign the agreement because of the representation. The other defendant did not testify at all and his wife testified that he "would not talk about it." When there is no apparent reason for one to sign a paper except the inducement made by false representations, the inference of result from that cause may be made in absence of direct testimony. But it is an extraordinary circumstance for the defrauded person not to testify. See *Howe* v. *Howe,* 199 Mass. 598, 603. In the case at bar, however, there was the motive on the part of the defendant Loranus, which might have been potent with an ethically sensitive person, that the deceased, his brother, had made a deliberate expression of dislike of the treatment accorded to him by that defendant, and of desire that he receive only $10 from his estate. Since the master did not see the witness, his finding upon this point carries no superior weight. This point, although not saved by the exceptions, nevertheless is open on appeal on the whole record from final decree in its effect on the conscience of the court in granting or denying relief.

It follows that at least the plaintiffs Emily F., Georgiana, and Elisha Capen are entitled to specific performance of the agreement so far as it relates to the farm and buildings.

The record is not satisfactory and it seems wise not to go further at present without giving the parties opportunity to move for the ascertainment of further facts, or for argument as to the form of a new decree.

*Decree reversed.*