ELLIS, Judge.
This is a tort action brought by Leroy J. David against Curtis E. Blalock and his liability insurer, Southern Farm Bureau Casualty Insurance Company, seeking damages for personal injuries.
The case came on for trial before a jury, when the plaintiff dismissed his suit against Blalock and proceeded to trial against the insurance company, which resulted in a verdict for the plaintiff. The trial judge granted a motion for a new trial and upon a joint motion of counsel for plaintiff and defendant, the matter was submitted to the trial court upon the record. Judgment was then rendered in favor of the defendant, dismissing plaintiff’s suit, and the latter has appealed.
The plaintiff was driving in an easterly direction toward Loranger, Louisiana, on or about 3:30 o’clock in the afternoon. His car crashed into the railing on the south side of a bridge and turned over on its side against a tree. Three highway employees saw the accident and assisted him in getting out of his car. He then walked up the highway, where these workers were going to place him in an old Ford truck of Lionel Reed who intended to take him to a hospital.
About this time Curtis Blalock approached the scene, traveling toward Independence, accompanied by his wife. When he saw there had been an accident he stopped. Seeing the highway workers were going to get the driver of an old truck which had driven up behind Bla-lock to take David to the hospital, Blalock asked his wife to get out of his car and told the highway workers he would take David to the hospital. No one accompanied these two and when they had nearly reached Independence, Louisiana, David dove or *693 jumped from the Blalock car. Blalock .stopped his car, rushed back to where David was lying on the highway, ran into an adjacent house and had its occupants call for •an ambulance, which arrived promptly and took David to the Lallie Kemp Hospital just below Independence.
David testified he stayed home from work the day of the accident because of a stomach ailment and that during the afternoon he left his home in his car to go to .get a haircut. He stated he had no recollection of any of the happenings after he left home until he awoke in the hospital that afternoon. He did have some vague idea that he had changed his mind about the haircut and had started somewhere else. He does not remember wrecking his car, "being helped out of it, or Blalock offering to take him to the hospital. Likewise, his testimony shows he did not remember jumping out of the car or being subsequently taken to the hospital in an ambulance.
There does not seem to be any dispute as to the law applicable to the facts of this case, as both counsel have it cited in their briefs. There is a legal obligation upon the part of one undertaking to •care for another and it is stated in 65 C.J.S. Negligence § 58, p. 551, as follows:
“§ 58. — Effect of Undertaking to Care for Another.
“One who undertakes to care for an ill or injured person is bound to use reasonable or ordinary care.
“One who is under a duty to care for •an ill or injured person is bound to use reasonable or ordinary care and to have a proper regard for the safety of such person, and is liable for further injury resulting from lack of proper care. Ordinarily, however, the duty is fully performed where the injured person is properly removed to a suitable place and there put under the charge of a competent physician, or where the ill person is placed in charge of a public official whose duty it is to take care of him and render relief.
“Although the contrary view has been asserted, the more generally accepted rule is that one who voluntarily undertakes to care for, or to afford relief or assistance to an ill, injured, or helpless person is under a legal obligation to use reasonable care and prudence in what he does. In such case the measure of the duty assumed is to exercise ordinary or common humanity, or to exercise with reasonable care such competence and skill as he possesses, or to exercise such care in the treatment of the injured person as the circumstances will allow; and the person who undertakes the care is liable if the existing injuries are aggravated or other injuries are caused by lack of this measure of care.
“A volunteer does not become an insurer of the person he seeks to aid, and is not bound to do everything possible to secure the comfort and safety of the other, or to continue to care for the injured person until his death or complete recovery, the duty being completely performed when such person is placed in the care of his family or near relatives or a competent physician or surgeon, or in a hospital or infirmary, or even in the custody of friends. It has been said that the duty of one who voluntarily undertakes to care for and assist such a person is the same as that of one who is legally obligated to render such care or assistance.”
In Brown v. Liberty Mutual Insurance Co., 234 La. 860, 101 So.2d 696, at page 698, liability under Louisiana Law is discussed as follows:
“ * * * Liability for damages under Article 2315 of the Civil Code is founded upon fault, and whether or not fault exists depends upon the facts and circumstances presented in each particular case. In determining fault, a common-sense test is to be applied — that is — how would a reasonably prudent man have acted or what *694 precautions would he have taken if faced with similar conditions and circumstances? The degree of care to be exercised must always be commensurate with the foreseeable damages confronting the alleged wrong doer Jji sfc ‡»
In addition, counsel for plaintiff has cited the law as contained in Section 102 of Personal Injury Accidents, Defenses and Damages, Vol. 6, Matthew Binder, in which it is stated:
“Section 102. Liability of Volunteer.
“Although generally no duty to volunteer aid or services, when such duty exists or is voluntarily undertaken, it is one of ordinary care. ‘It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. Rule that Volunteer owes duty of ordinary care usually rationalized on ground that defendant has worsened plaintiff’s position by affirmatively injuring plaintiff or increasing danger, or by misleading plaintiff or inducing plaintiff’s reliance, or deterring other would-be volunteers. 5}{ í}{ 5j{ Í
“The law has been correctly stated in the following quotation from the Restatement of Torts, Section 324:
“ ‘One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for bodily harm caused to him by aid, (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor’s charge; (b) the actor’s discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.’
“Comment ‘c’ under the same section reads:
“ ‘The rule stated in this Section relates to the conditions necessary to subject the actor to liability for the bodily hai-m of another under the conditions stated. The bodily harm of which the actor’s conduct is a legal cause may be either an actual increase in his injuries, due to the improper manner in which the actor acts in giving the aid or protection, or it may be an aggravation of' the original harm which would have been avoided had the actor acted with reasonable care for the other’s safety.’
“This rule of law has been cited with approval in the following cases:
“ ‘Black v. New York, N. H. & H. R. Co., 193 Mass. 488, 79 N.E. 979, 7 L.R.A.,N.S., 148, 9 Ann.Cas. 485; Gates v. Chesapeake and O. R. Co., 185 Ky. 24, 213 S.W. 564, 5 A.L.R., 507; Lacey v. United States (D.C.Mass.) 98 F.Supp. 219; Malloy v. Fong, 37 Cal.2d 356,. 232 P.2d 241; McDonough v. Buckeye,. S. S. Co. (D.C.Ohio) 103 F.Supp. 473;. Murphy v. Wabash R. Co. 228 Mo. 56,. 128 S.W. 481; Prosser, Torts (1941) p. 197; Slater v. Illinois Central Railroad, 209 F. 480, (1911); Dunham v. Village of Canister [303 N.Y. 498] 104 N.E.2d 872 (1952).’ ”
In the case of the United States v. Lawtaer, 1955, 219 F.2d 559, 562, in dealing-with a case in which the United States. Coast Guard had attempted to perform a rescue mission, the 5th Circuit Court ofAppeals stated as follows:
“For the uncontradicted evidence shows that the Coast Guard, pursuant to long established policy, affirmatively took over the rescue mission, excluding others therefrom, and thus not only placed the deceased in a worse position than when it took charge, but negligently brought about her death, and it is hornbook law that under such circumstances the law imposes an obligation upon everyone who attempts to-do anything, even gratuitously, for another not to injure him by the negligent performance of that which he has undertaken. 38 Am.Jur., ‘Negligence’,. Sec. 17 p. 659.”
*695 Under the above quoted and cited law, the defendant in volunteering his aid and services, that is, to take the plaintiff to the nearest hospital, burdened himself with the legal duty or obligation of using ordinary care in the performance of the voluntary service. The test to be applied as stated in Brown v. Liberty Mutual Insurance Company, supra is whether the defendant acted as a reasonably prudent man or did he take the precautions of a reasonably prudent man faced with similar conditions and circumstances, and under the facts did the defendant exercise a degree of care commensurate with foreseeable dangers involved in the performance of the voluntary service.
The answer is to be determined from the facts proven by a preponderance of the evidence.
As the defendant drove up to the scene of the wreck with his wife and stopped, the plaintiff was being helped out of his automobile which had turned over on its side. The men assisting the plaintiff were three highway workers who came up immediately after the accident in a state truck. Their help consisted in opening the door, and the plaintiff “slid out onto the ground”. Whether plaintiff got up alone or was assisted by the highway workers was not shown, but he was then asked if he was hurt and he said “No.” The highway workers described him as conscious and one testified that plaintiff was “in a stupor like.” However, the plaintiff walked over to the defendant’s automobile and got in the car and the door was shut by one of the highway workers. There is no question but that the door was properly closed but not locked. The testimony of the highway workers is substantially the same, however, one stated that plaintiff crawled out on the running board and they helped him down from the trees. It seems the car had turned over on its side against a tree and evidently he came out the top side. Also that one of them helped him up the ditch onto the highway, “but to me he could have walked by himself.”
Plaintiff was bleeding from some place on his head. It was variously described by the witnesses as a “scratch” or bleeding and blood on his face and shirt, but there is no definite testimony as to the extent or exact location of the wound from which the blood had come. It is further established by the record that one Lionel Reed drove up behind the defendant’s car “in an old half ton Ford truck and someone asked him * * * would he take the man to the hospital and he said yes and of course, my big mouth, I said, I have an automobile I can take the boy a little faster let me take him * * * ”. It was evidently the highway workers who asked Reed to take the man to the hospital in his old truck as there is no testimony that anyone else other than defendant and his wife were present at that time. Therefore, the three highway workers did not intend and had not offered to take the plaintiff to the hospital. In order to take the plaintiff to the hospital the defendant asked his wife to get in the car with Reed, whom he did not know very well, so that she could be taken to her mother’s home which was approximately seven-tenths of a mile distance. When the plaintiff got into the defendant’s car, the highway worker, Strahan, held the door “while he got in” and then closed the door and “pulled on it to check that it was shut good.” Strahan also testified that when the defendant drove off, it was in a regular manner with nothing reckless “about his driving.” This same witness also testified “ * * * As far as the injured man was concerned he gave the appearance that he knew what he was doing, and he was willing to get in the car to go with this man to the hospital * * *
The defendant testified that the actions of the plaintiff never led him to believe that he was in a stupor or daze. He admits that he did not examine him closely as he was interested in getting him to the hospital. In other words, the plaintiff did not do anything that would lead the defendant to believe he was unconscious, out of his mind, nor did he act abnormally.
*696 As they neared Independence on the way to the hospital, the defendant asked the plaintiff to “lean forward and keep that blood off my car seat, so he leans forward momentarily and sits back up and reaches up and grabs my mirror and turns it over, looks in my mirror, and I said you are not hurt bad, just sit back there and I will have you to the hospital in a few minutes, then the boy reaches over and grabs the door and I was under the opinion, I glanced right quick, and I thought he was just resting his arm, my arm rest and my door handle is just above the arm-rest, so I took it for granted the boy was resting his arm. But the boy opened the door and jumped out of my automobile.”
It is clear from the facts that the case of United States v. Lawtaer, supra, is inapposite. There is no testimony that the defendant affirmatively took over the delivery of the plaintiff to the hospital, excluding others therefrom, and thus placed the plaintiff in a worse position than when he took charge and then negligently brought about his jumping from the car. The plaintiff would have been taken in an old half-ton Ford truck and would have been accompanied only by the driver of that truck, Lionel Reed. There is no testimony that anyone offered to accompany plaintiff and defendant to the hospital. In fact, the testimony shows that the three highway men had no intention of taking him to the hospital, for one of them asked Lionel Reed to do so. Therefore, there is certainly nothing in the testimony to show that the defendant demanded that the plaintiff be taken to the hospital by him, nor did he exclude in any manner any other person present from accompanying him on the mission. The plaintiff was properly placed in the car and the door properly closed. There was nothing to warrant the defendant in believing that the plaintiff was not fully conscious before or after he got in his car, nor is there any act of commission or omission on the part of the defendant shown by the facts by which one could say that the defendant did not exercise or use the same reasonable, ordinary care or had the proper regard for the safety of the plaintiff as-would a reasonably prudent man or used the same precautions as a reasonably prudent man faced with similar conditions- and circumstances. The defendant exercised that degree of care commensurate-with any foreseeable danger. Had not the plaintiff committed an unforeseeable act,, his injuries would have been no greater than those which he received as a result of his original accident.
For the above and foregoing reasons the judgment of the District Court is affirmed.